JACKY WAYNE GRAY, Plaintiff-Appellee, v. HILLARY HALLETT, Defendant-Appellant.

Fifth District   No. 5—86—0793

Opinion filed May 16, 1988.—Rehearing denied June 10, 1988.

John L. McMullin and John P. Cunningham, both of St. Louis, Missouri, for appellant.

John B. Kistner and Donna Aronoff Smith, both of St. Louis, Missouri, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff Jacky Wayne Gray brought this action against Hillary Hallett in the circuit court of Madison County. The complaint charged Hallett with legal malpractice in the prosecution of his claim against Westlake Quarry Company. Specifically, the complaint alleged that Hallett was negligent in failing to obtain service of process over Westlake before the statute of limitations ran. After a trial by jury, a verdict was rendered in favor of Gray in the amount of $450,000 and the trial court entered judgment thereon.

On January 27, 1973, Jacky Wayne Gray was injured while working for Westlake Quarry Company on the motor vessel Catherine Cruise. Gray went to Hallett's office in May of 1973 and retained Hallett to represent him in his suit against Westlake. Hallett was suspended from the practice of law in Illinois from November 27, 1974, until March 7, 1976, during which time two of Hallett's partners, Hugh Talbert and Keith Fitzgerald, continued to represent Gray. A complaint was filed against Westlake in the circuit court of Madison County on December 8, 1975. The complaint, which alleged violation of the Jones Act (46 U.S.C. §688 (1982)), was filed 52 days prior to the running of the three-year statute of limitations applicable to Jones Act cases (45 U.S.C. §56) (1982)).

The evidence establishes that Keith Fitzgerald requested a summons which was issued on December 9, 1975. On January 27, 1976, Talbert and Fitzgerald requested an alias summons be issued. After being reinstated to practice law, Hallett requested another alias summons which was ultimately served on Billy Moore, master of the motor vessel John K., on June 19, 1976. Talbert and Reeves, another associate of Hallett's, requested another alias summons on February 8, 1977. Such summons was issued on April 26, 1977, and served on Billy Graham, master of the motor vessel K.C.

On October 21, 1977, Westlake moved to quash the service of June 19, 1976, as Westlake did not own the John K. nor did it employ Billy Moore. The motion was granted and service quashed on Decem-

ber 2, 1977. Between December 6, 1977, and December 18, 1978, Hallett requested four more alias summonses, none of which were served. On December 19, 1978, the Madison County sheriff's office filed a memorandum indicating that Westlake boats did not come through the area locks. Hallett requested another summons on January 12, 1979, and filed a motion to appoint a special process server. This process server was unable to obtain service. On August 30, 1979, Hallett again requested a summons and special process server and service was finally obtained on September 26, 1979.

Westlake moved to dismiss the suit for failure to use due diligence in obtaining service of process. On March 7, 1980, Judge Barr entered an order dismissing the case "without prejudice."

Gray filed the present action on September 24, 1981, alleging that as a result of Hallett's negligence in obtaining service on Westlake prior to the running of the statute of limitations, he was permanently foreclosed from recovering damages from Westlake. Hallett moved for summary judgment, arguing that a viable cause of action still remained after March 7, 1980, but this motion was denied. He also moved for a directed verdict at the close of plaintiff's case and at the conclusion of all the evidence, arguing that plaintiff failed to introduce any expert testimony on the issue of negligence. These motions were also denied. The jury returned a verdict against Hallett in the amount of $450,000.

Hallett argues that the trial court erred in denying his motion for a directed verdict because Gray failed to introduce expert testimony on the question of negligence. At issue is whether Hallett's conduct falls within the "common knowledge" exception to the rule that expert testimony is generally required to establish a claim of legal malpractice.

■ An attorney is liable to his client for damages when he fails to exercise the reasonable degree of care and skill expected from members of the legal profession. The law draws a distinction, however, between negligence and errors in judgment. (*Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586.) As a general rule, expert testimony is required to establish the standard of care; but where the attorney's negligence is so grossly apparent that a layman would have no difficulty in recognizing it, expert testimony is not required. *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580.

In the present case, Hallett maintains that service of process was an act requiring the use of legal judgment and that expert testimony was therefore required to establish the requisite standard of care. Gray argues that failure to obtain service of process is so obviously

negligent as to fall within the "common knowledge" exception of *House v. Maddox.*

In support of his position, Hallett cites *Brainerd v. Kates* and *Dorf v. Relles* (7th Cir. 1966), 355 F.2d 488. In *Brainerd*, a malpractice action was brought against an attorney for failure to timely file a notice of appeal in Federal court. The attorney had filed notice 30 days after the clerk of the court made the docket entry noting the trial court's dismissal of the action, but 32 days after the date of the actual order. The court held that expert testimony was necessary to establish whether the defendant attorney had exercised the required degree of skill, because at the time in question, it was unclear as to whether the notice of appeal had to be filed within 30 days of the order or the docket entry. *Brainerd*, 68 Ill. App. 3d at 786, 386 N.E.2d at 590.

In *Dorf*, the plaintiff sued his former attorney for failing to discuss a settlement offer made by opposing counsel during the course of the trial. The court held that expert testimony was required to determine what constitutes ordinary legal knowledge and skill common to members of the profession and whether the defendant attorney's conduct fell below that standard. *Dorf*, 355 F.2d at 492.

■■ ■ We do not believe the cases cited by Hallett are applicable to the present case. In *Brainerd*, the issue of whether the time for filing the notice of appeal ran from the date of the order or the date of the docket entry was not settled. *Dorf* was a pre-*House* case and the "common knowledge" exception did not then exist. The case at hand is more similar to *House v. Maddox*, wherein this court held that where the defendant's failure to meet the duty of care is so clear and obvious that even a layperson could appraise it, expert testimony will not be required. Obtaining service of process over a defendant is absolutely necessary to maintain a lawsuit and does not, as Hallett argues, require the use of legal judgment. Such judgment is required in deciding how best to effect service and questions of proper jurisdiction and venue, but failure to obtain service at all, or delaying for so long that a dismissal for lack of due diligence becomes a permanent bar by virtue of Illinois Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)), is clearly and unquestionably negligent. No expert testimony is needed to establish this. Any competent attorney should be able to obtain service over a defendant unless the defendant is out of the jurisdiction and either the long-arm statute is inapplicable or the "minimum contacts" standard of *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 2d 95, 66 S. Ct. 154, and its progeny cannot be met. Westlake was a Missouri corporation whose office and principal

place of business was in St. Louis. Hallett could easily have obtained service on Westlake pursuant to the Illinois long-arm statute (Ill. Rev. Stat. 1987, ch. 110, par. 2–208) by personal service on Westlake at its principal place of business. Nevertheless, Hallett repeatedly attempted to serve the master of one of Westlake's boats as it came through the Alton lock and dam despite a continued lack of success and having been told by the Madison County sheriff's office that Westlake boats did not come through the area locks.

Hallett's second argument is that the filing of Gray's complaint against Westlake tolled the statute of limitations. Hallett argues that because the statute was tolled, there remained 52 days after Judge Barr's March 7, 1980, dismissal in which the case could have been refiled. Because there was still a viable cause of action at the time of the alleged negligence, Hallett maintains there was no proximate cause between his negligence and Gray's injury. See *Schulte v. Burch* (1986), 151 Ill. App. 3d 332, 502 N.E.2d 856.

We need not address the issue of tolling, however, as we conclude that Hallett has waived this argument for purposes of appeal. Under the facts of this case, tolling of the statute of limitations constitutes an affirmative defense. As such, it should have been set forth in the pleadings pursuant to section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 43(4)). Because Hallett did not affirmatively plead this defense in his answer, nor did he argue it at trial, it is waived for purposes of appeal.

Hallett also argues that the trial court erred in instructing the jury that Judge Barr's March 7, 1980, dismissal order was with prejudice and that Gray was barred from refiling his claim after that date. Judge Barr's order dismissing Gray's suit against Westlake was based on Illinois Supreme Court Rule 103(b), which provides that an action may be dismissed if the plaintiff fails to exercise reasonable diligence in obtaining service of process, and if the failure to exercise reasonable diligence occurs after the statute of limitations has expired, such dismissal shall be with prejudice. (107 Ill. 2d R. 103(b).) Although Judge Barr's order stated that the dismissal was "without prejudice," the trial court instructed the jury that as a matter of law the dismissal was with prejudice and Gray was thereafter barred from bringing his claim against Westlake.

On appeal, Hallett claims that Rule 103(b) does not apply to lawsuits brought under the Jones Act. Citing *Burnett v. New York Central R.R. Co.* (1965), 380 U.S. 424, 13 L. Ed. 2d 941, 85 S. Ct. 1050, Hallett maintains that the purpose of the Federal limitations provision in the Jones Act is to achieve national uniformity and application of

Rule 103(b) would defeat this goal.

In *Burnett*, plaintiff brought an FELA action in the State court of Ohio shortly before the three-year limitation period expired, but the action was dismissed for improper venue. Several days later, plaintiff refiled in Federal court, but by then the limitations period had expired. The Supreme Court held that "when a plaintiff brings a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." *Burnett*, 380 U.S. at 434-35, 13 L. Ed. 2d at 949, 85 S. Ct. at 1058.

One of the theories plaintiff advanced was that the State "saving statute" should have been "tacked on" to the limitations period provided in the Federal statute. The saving statute provided that if a plaintiff's claim were dismissed for a procedural reason, he had one year to bring a second action. The court refused to accept this argument because not all States that had saving statutes provided the same length of time and to allow "tacking" would create nonuniformity between the States.

Hallett argues that Rule 103(b), like the saving statutes, would produce nonuniformity if held applicable for Jones Act cases. Specifically, he argues that under Federal law there is no requirement that a plaintiff exercise reasonable diligence in obtaining service of process and to apply Rule 103(b) would add a requirement to Jones Act cases brought in Illinois that may not be present in other States.

We do not agree with Hallett's contention. While *Moore Co. v. Sid Richardson Carbon & Gasoline Co.* (8th Cir. 1965), 347 F.2d 921, held that due diligence was not required to toll the statute of limitations period in FELA cases, we do not believe that *Moore* stands for the proposition that once a complaint is filed plaintiff may wait forever to obtain service. Though the limitation period may be tolled, a plaintiff must still exercise diligence in obtaining service or risk losing his right to pursue his claim. Application of Rule 103(b) would not, as Hallett argues, introduce nonuniformity between the States and we are not persuaded by this argument that the rule is inapplicable to Jones Act cases.

Because the lack of due diligence occurred after the limitation period would have run, the trial court did not err in instructing the jury that Judge Barr's March 7, 1980, dismissal order was with prejudice as a matter of law.

■ Hallett's fourth argument is that the trial court erred in allowing the plaintiff to question him as to his conduct subsequent to

the March 7, 1980, dismissal. Such questions, Hallett contends, were outside the scope of the pleadings.

The record indicates that the court allowed plaintiff to question Hallett as to whether he filed any other pleading in the case or whether, in opposing the motion to dismiss, he filed anything with the court that would support his defense of reasonable diligence. As Hallett's defense is that he did exercise reasonable diligence in the prosecution of Gray's claim, we conclude that the questions Hallett complains of were within the scope of the pleadings.

■ Hallett also claims that the trial court should have granted his motion for mistrial. The motion was based on the court's repeated instructions to the jury, made during Hallett's testimony, that they were to judge the credibility of the witnesses. Repeatedly making this instruction, Hallett contends, gave the jury the impression that the trial judge did not consider him credible. Upon examining the record, we find three instances during Hallett's testimony in which the judge instructed the jury that it was their responsibility to judge the credibility of witnesses. We will not lengthen this opinion further with a discussion of each; it suffices to say that we find the context in which each instruction was given to be both appropriate and nonprejudicial.

■ Hallett further argues that the trial court erred in giving plaintiff's instruction No. 22, which contained loss of future earnings, as an element of damages, because no doctor testified that Gray would be unable to work in the future. Plaintiff's medical testimony consisted of a videotape deposition of Dr. Robert Graff, who testified that Gray suffered from post-traumatic lower back syndrome as a result of his injury. Dr. Graff also testified that because these symptoms had persisted over a period of 13 years, they were permanent. Gray testified that after the accident he could not do hard manual labor. Hallett's medical expert testified that Gray was capable of working on a boat as a laborer.

A physician may testify as to whether an injury is permanent (*Walter v. Illinois Central R.R. Co.* (1958), 19 Ill. App. 2d 481, 154 N.E.2d 331), and once a plaintiff introduces evidence of permanent injury, the jury should be instructed as to loss of future earnings. (*Morehead v. Peyton* (1979), 73 Ill. App. 3d 809, 392 N.E.2d 433.) We conclude that the instruction was properly given and that a reasonable jury could conclude that the weight of the relevant evidence supported Gray's claim.

■ Finally, Hallett argues that the trial court erroneously denied his motion *in limine* and that his suspension from the practice of law should not have been introduced into evidence. The record indicates

that Hallett was asked if he was suspended from the practice of law in Illinois, confirmed the date of the suspension, and if he arranged for any of his associates to handle Gray's case during the period of suspension. This evidence was offered to explain why Talbert and Fitzgerald had filed Gray's complaint and why they had requested several summonses. Plaintiff's counsel did not question Hallett as to the reasons for the suspension.

Admissibility of evidence rests with the sound discretion of the trial court. (*In re Estate of Galvin* (1983), 112 Ill. App. 3d 677, 445 N.E.2d 1223.) The trial court could easily have concluded that the probative value of this evidence outweighed any potential prejudice, and we find no abuse of discretion in its decision to allow the admission of the fact of Hallett's suspension.

For the aforementioned reasons, the decision of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON, P.J., and WELCH, J., concur.