BARBARA G. BARTH, Plaintiff-Appellee, v. JAMES J. REAGAN, Defendant-Appellant.

Second District   No. 2—89—0075

Opinion filed October 27, 1989.

Snyder, Clarke, Dalziel & Johnson, of Waukegan (Julian Johnson, of counsel), for appellant.

Rita Farrell, of Early, Collison, Tousey, Regan & Farrell, of Elgin (John F. Early, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Barbara G. Barth, filed suit in the circuit court of Lake County against defendant, James J. Reagan, seeking recovery, under a theory of attorney malpractice, for the loss of equity in certain real estate properties allegedly resulting from defendant's negligence in the defense of foreclosure actions on the properties. Plaintiff's second amended complaint contained counts against Northbrook Trust & Savings Bank, but the circuit court dismissed these counts, and its judgment was affirmed by this court in *Barth v. Reagan* (1986), 146 Ill. App. 3d 1058, 497 N.E.2d 519. The cause proceeded to a jury trial on plaintiff's fourth amended complaint, and, following a jury verdict for plaintiff, judgment was entered on the verdict in the amount of $48,604.90, representing $69,435.57 total damages reduced by 30% representing plaintiff's contributory negligence.

The issues raised by defendant on appeal are: (1) whether the circuit court erred in submitting the issue of attorney malpractice to the

jury without the expert testimony of an attorney witness; (2) whether the circuit court erred in permitting plaintiff to use an expert real estate appraiser as a witness who had not been disclosed; and (3) whether the circuit court erred in allowing damages in the nature of economic loss to stand in this action based on negligence.

Plaintiff's fourth amended complaint alleged, in pertinent part, that defendant owed plaintiff a duty to notify her and keep her fully informed of the status of litigation involving her property; that defendant owed plaintiff a duty to advise her of her rights and obligations with respect to such actions; and that defendant negligently failed to inform plaintiff of the pendency of foreclosure actions against her property, or to advise her of her right to cure defaults or redeem the property. The complaint also alleged that defendant breached a duty to plaintiff in that certain of his employees notarized documents purporting to bear plaintiff's signature which were not signed in their presence, and in doing so prevented plaintiff from learning of pending foreclosure actions against her property.

Evidence adduced at trial establishes the following facts. Plaintiff is a licensed real estate agent and broker currently living in Arizona. Plaintiff was first licensed as an agent in 1970. Prior to 1986, plaintiff lived in Glenview, Illinois, where she had been employed as a realtor.

In the summer of 1976, plaintiff and her husband at that time, Edward Barth, consulted defendant about purchasing rental properties for investment purposes. They informed defendant that they intended for Edward to manage the property, to collect rent, and to make mortgage payments. Defendant suggested that the properties and the Barths' residence, purchased by plaintiff prior to her marriage to Edward, be placed into land trusts, with plaintiff holding the beneficial interests. Defendant stated that he would direct that inquiries regarding the trusts be sent to him. Later in 1976, the Barths purchased two investment properties, located at 1128 and 1130 Inverrary in Deerfield, Illinois. These properties and the Barths' residence were placed into land trusts in which plaintiff held the entire beneficial interests and Edward Barth was given the power of direction. The trust agreements were prepared by defendant. In 1977, the Barths purchased a third investment property located at 1420 Wilshire Drive in Vernon Hills, Illinois.

Subsequently, foreclosure actions were instituted with respect to all the properties. Defendant testified that he became aware of the foreclosure proceedings when Edward Barth brought the summonses in those actions into his office. Defendant entered appearances on behalf of plaintiff and her husband in three foreclosure actions in Lake

County and filed answers in certain of the actions. Two of the answers bore signatures purporting to be plaintiff's and were notarized by employees of defendant. The evidence does not disclose the circumstances under which the employees notarized the signature.

Plaintiff testified that she was unaware that any foreclosure action had been instituted until June 1, 1981, when her husband told her "the properties are all gone." Plaintiff telephoned defendant, who also told her the properties were "gone." Plaintiff met with defendant the following day at his office. Plaintiff testified that she asked defendant why he did not inform her of the foreclosure proceedings. Defendant responded that "he couldn't" without further explanation. According to plaintiff's daughter, also present at the meeting, defendant said Mr. Barth had told him not to inform plaintiff. Plaintiff testified that she did not sign the answers in the foreclosure actions purporting to bear her signature and that defendant had never personally consulted or spoken with her in connection with the foreclosures prior to June 2, 1981. Plaintiff further testified that she had not been served with summons in any of the foreclosure proceedings. In at least one of the foreclosures, the summons was apparently served on plaintiff by substitute service on her husband.

Plaintiff and Edward Barth were divorced in April 1982, and Edward's whereabouts at the time of trial were unknown.

Defendant, called by plaintiff as an adverse witness, testified that he never personally met with plaintiff nor did he telephone her to advise her of the foreclosure proceedings or any right she might have to cure the defaults. However, defendant sent letters concerning the foreclosures which were addressed jointly to plaintiff and her husband. One of the letters dated October 9, 1980, indicated that a sheriff's sale of the marital residence located at 1817B Wildberry had been conducted and Mr. and Mrs. Barth had 90 days within which to redeem the property. Another letter dated October 15, 1980, referred to "various litigation matters" and indicated that the property at 1130 Inverrary Lane had been sold and the redemption period would expire on November 1, 1980. The letter also indicated that a sheriff's sale of the property at 1128 Inverrary was imminent. Defendant testified that he set up a series of appointments with Mr. Barth to bring plaintiff in, but they never came in. Defendant denied telling plaintiff at the June 2, 1981, meeting that he "couldn't" tell her about the foreclosures previously. Rather, defendant testified that he told plaintiff that he had sent her numerous letters.

Stephen Tennant, an attorney and defendant's associate during the period in question, testified that he was assigned to handle two of the

foreclosure actions against the Barths. Tennant met with Edward Barth on at least one occasion and had seen him in the office three or four times between 1979 and 1981. Tennant never saw plaintiff in the office during this period of time. On the occasions when Tennant saw Mr. Barth, he appeared intoxicated. According to Tennant, defendant also represented the Barths in connection with criminal charges of failure to file tax returns and represented Mr. Barth in a traffic matter. Tennant testified that the checks Mr. Barth tendered to pay his bill from defendant were returned N.S.F., and Barth eventually settled his account in cash. Tennant admitted that he notarized one of the answers purporting to bear plaintiff's signature although he did not observe her signing it.

During trial, defendant moved to bar Samuel Levine, an attorney, and Darwin J. Dietrick, a real estate appraiser, from testifying as experts, because of plaintiff's failure to disclose them pursuant to Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)). Defendant asserted that plaintiff first disclosed these witnesses by a letter dated August 22, 1988, less than 60 days prior to the start of trial. During argument on the motion, it was established that in 1984, plaintiff had furnished defendant's attorney with real estate appraisal reports prepared by Dietrick and had sent a letter indicating that plaintiff planned to call a real estate appraiser as an expert witness. The trial court granted defendant's motion as to Levine, but allowed Dietrick to testify.

Dietrick testified that he appraised the properties located at 1128 and 1130 Inverrary and 1420 Wilshire in February 1984. According to Dietrick, 1128 Inverrary was worth $56,500 on July 8, 1980, and May 16, 1981, 1130 Inverrary was worth $58,580 on May 23, 1980, and 1420 Wilshire was worth $69,000 on June 18, 1980, and May 24, 1981. Loan amortization tables showing the monthly outstanding principal balances on the loans were admitted into evidence.

Plaintiff testified that she was financially able to pay the arrearages on the properties and would have done so had she been aware of the foreclosures. Following the foreclosure on her residence, plaintiff was able to repurchase the residence. In order to do so, plaintiff borrowed $72,000 at 16% interest. Plaintiff had paid 6¾% on the original loan.

Following the denial of defendant's motions for a directed verdict at the close of plaintiff's case in chief and at the close of all evidence, the jury returned a verdict in favor of plaintiff in the amount of $48,604.90 ($69,435.57 total damages reduced by 30% representing plaintiff's contributory negligence).

Defendant initially contends that the circuit court erred in submit-

ting the issue of attorney malpractice to the jury without the expert testimony of an attorney witness. Defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence based on the lack of such expert testimony were denied. Defendant argues that Illinois case law requires expert testimony to establish the standard of care in a legal malpractice action except under the "common knowledge" exception, where the attorney's negligence is so grossly apparent that a layman would have no difficulty in recognizing it without such expert testimony. He maintains that the exception is inapplicable under the evidence in this case.

Plaintiff responds that the evidence presented shows an absolute lack of communication between defendant and plaintiff concerning the four mortgage foreclosure actions brought against the land trusts in which plaintiff was the sole beneficiary. She contends that an attorney has the duty to communicate with a client concerning the progress of a legal matter so that the client can make fully informed choices and take proper steps to protect one's interest. She further argues that defendant's failure to communicate with her, the client, was so clearly and obviously a breach of duty that a lay person could appraise it without expert testimony.

■■ ■ In an action for legal malpractice, the plaintiff must prove that the defendant attorney owed plaintiff a duty of due care arising from the attorney-client relationship, that the defendant breached that duty, and that, as a proximate result, the plaintiff sustained injury. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 193, 492 N.E.2d 1284.) Only when an attorney fails to exercise a reasonable degree of professional care and skill will he be liable to his client. (*Sexton*, 112 Ill. 2d at 193, 492 N.E.2d at 1286-87.) Illinois Appellate Court decisions have held that, as a general rule, expert testimony is required to establish the standard of care and its breach in legal malpractice cases; but where the attorney's negligence is so grossly apparent that a layman would have no difficulty in recognizing it, expert testimony is not required. (*Gray v. Hallett* (1988), 170 Ill. App. 3d 660, 663, 525 N.E.2d 89; *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559; *House v. Maddox* (1977), 46 Ill. App. 3d 68, 71-73, 360 N.E.2d 580.) Expert testimony has been held to be unnecessary in Illinois only in cases where the attorney has failed to comply with the statute of limitations (*House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580), where the attorney failed to obtain service on a defendant before the statute of limitations ran (*Gray v. Hallett* (1988), 170 Ill. App. 3d 660, 525 N.E.2d 89), and where the attorney failed to take any action whatsoever in connection

with estate matters entrusted to him (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47).

■■ Illinois follows the generally accepted rule from other jurisdictions that expert evidence is required in a legal malpractice case to establish the attorney's breach of his duty of care except in cases where the breach or lack thereof is so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen. (Annot., 14 A.L.R.4th 170 (1982); 2 R. Mallen & J. Smith, Legal Malpractice §27.15 (3d ed. 1989).) The most common reason for producing expert testimony is to establish both the standard of care and a deviation therefrom. (2 R. Mallen & J. Smith, Legal Malpractice §27.16, at 676 (3d ed. 1989).) There are, however, three reasonably well-defined exceptions to this rule: (1) where the area of the alleged negligence is within the common knowledge of a lay person; (2) where the claimed error was the failure to follow the client's instructions; and (3) where the attorney concedes that the charged misconduct constitutes malpractice, but denied that the conduct took place. (2 R. Mallen & J. Smith, Legal Malpractice §27.15, at 671-73 (3d ed. 1989).) Here, we are concerned only with the "common knowledge" exception.

The most typical example of the "common knowledge" exception to the requirement of expert testimony is the attorney allowing the statute of limitations to run against his client, as occurred in *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580. Another line of cases applying this exception in other jurisdictions involves an unexcused failure of the attorney to communicate material matters to the client. (2 R. Mallen & J. Smith, Legal Malpractice §27.15, at 672 (3d ed. 1989).) It is in this context that plaintiff contends the total failure of defendant, her attorney, to communicate with her concerning the foreclosure suits was negligence so grossly apparent that the experience and common sense of lay persons would suffice to establish the standard of care. We disagree.

While defendant did not communicate directly with plaintiff following the filing of the foreclosure suits, the evidence shows that plaintiff's husband, Edward Barth, who was designated in the trust agreements to direct the trustee in dealings with the properties, brought the summonses on the foreclosure suits to defendant for legal representation of plaintiff and himself. Defendant, who had drawn up the trust agreements on the subject properties at the direction of plaintiff and her husband, knew that the husband was managing the rental properties. Thus, he filed answers or appearances in the foreclosure suits at the direction of the husband whom he knew was the managing agent

for the properties and the spouse of the beneficial owner, plaintiff. Plaintiff's husband met thereafter with defendant and his associate concerning the lawsuits. Defendant testified that he attempted to set up meetings with both plaintiff and her husband but was unsuccessful.

Further, during the course of the litigation at least two letters were sent to plaintiff's home addressed to her and her husband explaining the progress on the foreclosure suits and the time period for redemption. Plaintiff testified she never received the letters. It is apparent from the record that her husband did not inform her about the delinquencies in the mortgage payments which led to the foreclosure suits and kept from her any knowledge of the lawsuits. She was not personally served with the summons on these suits. Rather, it appears there was substitute service on her by serving a copy on her husband at their abode.

■■ Under the circumstances set forth above, defendant did communicate with plaintiff's spouse, who managed the properties at issue, concerning the lawsuits and did write two letters addressed to plaintiff and her husband concerning the suits and the redemption period. Whether defendant's conduct in representing plaintiff through communication with her husband on the properties the husband managed for them and in filing verified answers to the suit without observing plaintiff sign the answers was a deviation from the applicable standard of care must be established by the expert testimony of an attorney. On these facts, we cannot say that the failure to actually personally communicate with plaintiff constituted negligence so grossly apparent that a layman would have no difficulty in recognizing it. The factual matters present here are such that the issue of negligence is not sufficiently clear so as to be determined by layman under the "common knowledge" exception, but falls within the well-recognized general rule that expert testimony is necessary to establish the standard of care owed by an attorney.

■■ As the evidence was submitted by plaintiff without the required expert testimony, the circuit court erred in not granting defendant's motion for a directed verdict at the close of plaintiff's case. Accordingly, the judgment for plaintiff is reversed. We, therefore, need not resolve the other two issues raised on appeal by defendant.

Reversed.

UNVERZAGT, P.J., and WOODWARD, J., concur.