(No. 69552.—

# BARBARA G. BARTH, Appellant, v. JAMES J. REAGAN, Appellee.

*Opinion filed November 30, 1990.*

400

Early, Collison, Tousey, Regan & Farrell, of Elgin (John F. Early and Rita A. Farrell, of counsel), for appellant.

Snyder, Clarke, Dalziel & Johnson, of Waukegan (Julian Johnson, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

This appeal raises an issue of first impression in this court: When must a plaintiff in a legal malpractice action present expert testimony to establish the cause of action?

Plaintiff, Barbara G. Barth, brought this legal malpractice action against defendant, James J. Reagan, in the circuit court of Lake County. Plaintiff sought damages for the loss of equity in certain parcels of real property that resulted from defendant's allegedly negligent defense in foreclosure actions involving the parcels. Following a jury verdict in plaintiff's favor, the trial court entered judgment on the verdict in the amount of $69,435.57, which was reduced by plaintiff's 30% contributory negligence to $48,604.90. The appellate court reversed. (190 Ill. App. 3d 516, 523.) We granted plaintiff's petition for leave to appeal (107 Ill. 2d R. 315).

## FACTS

Before the events which led to the present action took place, defendant attorney had represented plaintiff in a number of legal matters. In 1976, plaintiff and her then husband, Edward Barth (Edward), consulted defendant regarding the purchase of rental property for investment purposes. Following defendant's advice, plaintiff and her husband purchased several properties and placed them, along with the couple's marital resi-

dence (which plaintiff had owned prior to her marriage to Edward), into land trusts. A local bank served as trustee, Edward served as manager of the properties and had the power of direction under the trust agreements, and plaintiff held all beneficial interests. Defendant served as the Barths' attorney when the trusts were created, and stated that he would direct that all inquiries regarding the trusts be sent to him.

Trouble began in 1979 when Edward took out a second mortgage on plaintiff's residential property without her knowledge. He mortgaged this same property again in 1980. He also failed to pay the debts on the investment properties when payments were due, and failed to make mortgage payments. Thus, foreclosure actions were instituted as to all the properties in trust. Edward failed to inform plaintiff of these actions, and continued to keep the foreclosure suits secret by intercepting all mail, summonses, and notices connected with those cases.

We note that Edward was unable to intercept a notice as to one matter, which was a garnishment proceeding for the Barths' failure to pay assessments of over $1,000 on one of the investment properties. Plaintiff's employer was served with a wage-deduction summons in March 1981. When plaintiff confronted her husband about this matter, he stated that one of the tenants had failed to pay several months' rent. Plaintiff never questioned her husband regarding this matter again, and the record reveals that she never questioned him regarding the amount of money in the account the couple maintained for the investment properties, never examined the account's statements, and never questioned her husband regarding whether he was making any of the other payments.

When the mortgage foreclosure actions were filed, Edward was personally served, while service on plaintiff

was effected through substituted service on her husband. Edward brought the summonses to defendant and retained defendant to represent the Barths in the foreclosure actions. At that time, Edward informed defendant and Stephen Tennant, one of defendant's associates, that he was unable to bring the mortgages to a current payment status because he was insolvent.

Defendant entered appearances on behalf of plaintiff and her husband in several of the foreclosure actions, and also filed answers. Two of the answers contained what appeared to be plaintiff's notarized signature. However, plaintiff testified that she never signed those documents, and Tennant admitted to notarizing one of the signatures without observing plaintiff signing the document.

At trial, plaintiff testified that she was unaware of the foreclosure actions until June 1981, when her husband told her the properties were "all gone." Plaintiff immediately telephoned defendant, who confirmed the bad news. Plaintiff also testified that when she asked defendant why she was not informed regarding the foreclosure proceedings, defendant, without further explanation, responded that "he couldn't." Plaintiff alleged that defendant owed her a duty to notify her and keep her informed of any litigation involving her property, that defendant failed to advise her of her rights and obligations with respect to such litigation, that defendant breached his duty by allowing his employees to notarize documents purporting to bear plaintiff's signature which were not signed in her presence and which aided in keeping her from discovering the existence of the foreclosure suits, and that defendant negligently failed to specifically inform her of the pending foreclosure actions against her property and to advise her of her right to cure defaults or redeem the property.

Defendant testified that he never personally met with or telephoned plaintiff regarding the foreclosure suits or her rights to cure the defaults. However, the record reveals that defendant sent several letters concerning the foreclosures which were jointly addressed to plaintiff and her husband. Also, defendant made several appointments with Edward which were to include plaintiff, but neither Edward nor plaintiff ever kept these appointments. Defendant denied ever telling plaintiff that he "couldn't" tell her about the foreclosures before June 1981, but instead testified that he told plaintiff of the numerous letters he had sent her, in which he had explained the status of the foreclosure actions and any possibility the Barths had to redeem the properties.

Also, defendant presented evidence from plaintiff's petition for dissolution of her marriage to Edward. In that document, plaintiff had stated, under oath and over her signature, that Edward was responsible for economic damages plaintiff suffered through the loss of the trust properties.

On the third day of the trial, defendant moved to bar the testimony of Sam Levine, one of plaintiff's expert witnesses. Levine was plaintiff's legal malpractice expert. The trial court noted that it was bound by a recent Second District appellate court decision (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214) which held that trial courts must bar the testimony of expert witnesses of litigants who fail to disclose them to opposing parties under Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)), and granted the motion to bar because plaintiff had failed to disclose the expert's identity at least 60 days before trial. See 190 Ill. App. 3d at 520.

At the close of plaintiff's case, defendant moved for a directed verdict. Defendant claimed that plaintiff had failed to present sufficient evidence on the legal malpractice issues because plaintiff had not presented any ex-

pert testimony. The trial court denied this motion, finding that the evidence presented by plaintiff was such that defendant's negligence could be assessed by a jury of lay persons without the testimony of a legal expert. The jury returned a verdict, upon which the trial court entered judgment, in favor of plaintiff.

The appellate court reversed, finding that the trial court had erred in denying defendant's motion for a directed verdict. The appellate court recognized that, as a general rule, expert testimony is required to establish the standard of care and its breach in legal malpractice cases. It also noted that in some instances, the attorney's negligence is so grossly apparent that laymen have no trouble recognizing it. Under this "common knowledge" exception, no expert testimony is necessary. (190 Ill. App. 3d at 521-22.) The appellate court held that the type of professional negligence in question in the case at bar was not apparent enough to laymen to allow the trial court to dispense with expert testimony. 190 Ill. App. 3d at 521-22.

## ANALYSIS

Attorneys are liable to their clients for damages in malpractice actions only when they fail to exercise a reasonable degree of care and skill. (*Gray v. Hallett* (1988), 170 Ill. App. 3d 660, 663; *Gelsomino v. Gorov* (1986), 149 Ill. App. 3d 809, 813; *Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 801; *Spivack, Shulman & Goldman v. Foremost Liquor Stores, Inc.* (1984), 124 Ill. App. 3d 676, 683; *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522; *House v. Maddox* (1977), 46 Ill. App. 3d 68, 71; Kasten, *Attorney Malpractice in Illinois: An Early Chapter in a Book Destined for Great Length*, 13 J. Marshall L. Rev. 309, 314 (1980) (hereinafter *Attorney Malpractice in Illinois*).) The law distinguishes between errors of negli-

gence and those of mistaken judgment. (*Schmidt*, 75 Ill. App. 3d at 522; *House*, 46 Ill. App. 3d at 71.) Generally, the rules of evidence which govern medical malpractice litigation are applicable to legal malpractice suits, except where it is necessary to accommodate differences in the nature of the two professions. (*Attorney Malpractice in Illinois*, 13 J. Marshall L. Rev. at 321, citing *Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018; *Olson v. North* (1934), 276 Ill. App. 457.) Because the concept of *res ipsa loquitur* is not applicable in legal malpractice cases (M. Polelle & B. Ottley, Illinois Tort Law 452 (1985) (citing the *Olson* case)), the standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony. *Gray*, 170 Ill. App. 3d at 663; *Gelsomino*, 149 Ill. App. 3d at 814; *Schnidt*, 140 Ill. App. 3d at 801; *Spivack*, 124 Ill. App. 3d at 683-84; *Sheetz v. Morgan* (1981), 98 Ill. App. 3d 794, 797-98; *Schmidt*, 75 Ill. App. 3d at 522; *House*, 46 Ill. App. 3d at 71; *Attorney Malpractice in Illinois*, 13 J. Marshall L. Rev. at 321.

Failure to present expert testimony is usually fatal to a plaintiff's legal malpractice action. (See *Schnidt*, 140 Ill. App. 3d at 802; *Schmidt*, 75 Ill. App. 3d at 523; *Bonhiver v. Rotenberg, Schwartzman & Richards* (7th Cir. 1972), 461 F.2d 925, 928; 2 R. Mallen & J. Smith, Legal Malpractice §27.14 (3d ed. 1989); *Attorney Malpractice in Illinois*, 13 J. Marshall L. Rev. at 321; see also *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256-57 (explaining expert testimony rules and exceptions in medical malpractice litigation).) However, Illinois courts have recognized that where the common knowledge or experience of lay persons is extensive enough to recognize or infer negligence from the facts, or where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it, expert testimony as to the applicable standard of care is not re-

quired. (*Gray*, 170 Ill. App. 3d at 663; *Sheetz*, 98 Ill. App. 3d at 799; *Schmidt*, 75 Ill. App. 3d at 522; *House*, 46 Ill. App. 3d at 73; see 2 R. Mallen & J. Smith, Legal Malpractice §27.15 (3d ed. 1989); M. Polelle & B. Ottley, Illinois Tort Law 453 (1985); *Attorney Malpractice in Illinois*, 13 J. Marshall L. Rev. at 321.) Plaintiff claims that the circumstances in the case at bar fall into this "common knowledge" exception to the requirement of expert testimony in legal malpractice cases, by arguing that the basic duty of an attorney to communicate with a client is within the common knowledge of lay persons.

Specifically, plaintiff claims that defendant never advised her of the pending mortgage foreclosure actions on the four properties in which she owned all beneficial interests. Further, she claims that defendant failed to inform her of her right to cure the defaults on the mortgages or redeem the properties from foreclosure. Plaintiff argues that this total lack of communication concerning her personal interests in the case at bar patently violated the attorney's obligation to communicate with his client that this court recognized in *Rogers v. Robson, Masters, Ryan, Brumond & Belom* (1980), 81 Ill. 2d 201. She also asserts that the presence of her forged signature on papers filed by defendant's firm is further evidence of defendant's blatant disregard for the proper standard of care. Plaintiff argues that these acts of negligence are so grossly apparent that no expert testimony was needed at trial to prove the cause of action.

We disagree. The standard of care in the case at bar is not as obvious as plaintiff would have us believe. In this case, defendant did communicate with plaintiff's husband, who managed and had the power of direction over all the properties at issue, and whose actions were properly within the terms of the trust agreements when he engaged defendant to represent both plaintiff and himself in the foreclosure actions. Defendant presented

evidence of letters he jointly addressed to plaintiff and her husband concerning the foreclosure suits and explaining the redemption period. Plaintiff does not contend that the defendant's communications with her husband were improper, but rather alleges that defendant had a duty to make sure that the information conveyed to Edward was also conveyed to her personally.

On these facts, we cannot say that defendant's failure to directly communicate with plaintiff was negligence so grossly apparent that a lay person would have had no difficulty recognizing it. Edward's actions in retaining defendant, and defendant's communications with Edward, were certainly proper considering that Edward and defendant were engaged in an attorney-client relationship. We acknowledge that plaintiff also was defendant's client. However, the trust agreement created a specific legal relationship between plaintiff and her husband which is governed by the trust agreement and the laws of this State dealing with land trusts. We hold that, because the details of Edward's duties as related to plaintiff's rights as beneficiary under the trust agreement and Illinois land trust law would not be within the common knowledge of lay persons, expert testimony was required at trial to explain not only the legal relationship that the trust agreement created between plaintiff and her husband, but also how defendant could or should have viewed this relationship when he funneled all the information dealing with the trust properties through Edward.

Further, by the time of the institution of the foreclosure actions, defendant had been exclusively communicating with a representative of plaintiff in matters associated with the trust properties. However, that representative (plaintiff's husband) was also plaintiff's codefendant in the foreclosure suits. It is not clear that defendant's failure to communicate directly with plaintiff

was a breach of his duty to communicate, because any question of the applicable standard of care in defendant's professional relationship with plaintiff and her husband turned on questions of "conflicting interest." "Conflicting interest" is the simultaneous adverse representation of multiple clients. (1 R. Mallen & J. Smith, Legal Malpractice §12.2 (3d ed. 1989).) We view the concerns an attorney has regarding his or her professional responsibilities in this area as being complex (see 107 Ill. 2d R. 5—105 (attorney disciplinary rule prohibiting multiple employment if exercise of attorney's judgment on behalf of one client will adversely affect representation of another, but allowing such multiple representation if attorney can adequately represent interests of each client and attorney fully discloses multiple representation to each client); see also 134 Ill. 2d R. 1.7), and we do not find the intricacies of this type of representation to be within the common knowledge of lay persons. Whether defendant, by exclusively communicating with plaintiff through her husband, was performing his duties in derogation of the applicable standard of care must therefore be established through expert testimony.

Plaintiff cites to three appellate court decisions to support her contention that the alleged negligence in this case fits into the common-knowledge exception. (*Gray*, 170 Ill. App. 3d at 663-65; *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 374; *House*, 46 Ill. App. 3d at 73.) However, each of these cases is distinguishable from the case at bar. *House* concerned an attorney who failed to file a case within the statute of limitations period. (*House*, 46 Ill. App. 3d at 73.) *Sorenson* involved an attorney who failed to take any action on an estate matter. (*Sorenson*, 90 Ill. App. 3d at 369.) *Gray* involved a situation where an attorney in a personal injury case failed to obtain service of process on the defendant within the statute of limitations period. (*Gray*, 170 Ill. App. 3d at

662.) In each case, the court held that the common-knowledge exception applied, and no expert testimony was required. However, in each of these cases, the attorney's alleged negligent act involved a failure to meet a widely recognized time deadline. (See *Attorney Malpractice in Illinois*, 13 J. Marshall L. Rev. at 321.) The case at bar does not involve an obvious deadline which the attorney clearly missed, but a question of which of two potentially adverse clients deserved the attorney's attention and loyalty. While we do not limit the requirement of expert testimony to the latter situation, we use its example to illustrate how a lay person could easily understand, from personal experience, a violation of the standard of care in the former situation, but be misled without expert testimony in the latter.

Plaintiff complains that defendant's law firm filed foreclosure suit answers which contained plaintiff's notarized "signature" without observing plaintiff signing the answers, but her concern is misplaced. Plaintiff is apparently claiming that the illegality involved in her improperly notarized ostensible signature and the filing of court documents containing that allegedly forged signature is negligence as a matter of law. We cannot agree. In order to sustain a legal malpractice claim, plaintiff must prove a causal connection between the attorney's alleged negligent act and her injury. (M. Polelle & B. Ottley, Illinois Tort Law 448 (1985).) Filing falsely notarized or improperly verified court documents is indeed wrongful and, if the aggrieved client can establish a forgery as a fact, it can be used as evidence of an attorney's violation of the applicable standard of care. However, the gravamen of plaintiff's complaint is that defendant's alleged failure to properly communicate with plaintiff as to the management of the trust properties and the existence and status of the foreclosure actions involving those properties violated the applicable standard of care. Thus, the question

before us is not whether the alleged forgeries or admittedly defective notarizations were improper, but whether defendant's failure to notice them or inform plaintiff of them was a violation of the applicable standard of care regarding an attorney's duty to communicate with his client. Because the problems involving whether defendant should have informed plaintiff of the improperly notarized answers also involve questions of potentially conflicting interests between plaintiff and her husband, we hold that expert testimony was required at trial to prove plaintiff's cause of action.

Furthermore, plaintiff's argument that this court's decision in *Rogers* establishes the standard of care in the case at bar is erroneous. Plaintiff cites *Rogers* as holding that attorneys have a duty to disclose to their clients all material matters involving pending litigation, and the failure to make such a disclosure affects the ability of a client to select what action to take to protect her interest. *Rogers*, however, dealt with a case of conflicting interest where the attorney chose to follow the instructions of one client (an insurance company) to settle the case, while ignoring the express instructions of another client (a doctor) not to settle. The attorney in *Rogers* failed to inform the doctor that he was settling the case. The *Rogers* court held that the attorney had a duty to disclose this information to the doctor before taking action. (*Rogers*, 81 Ill. 2d at 203-05.) The conflicting interest in *Rogers* was clear because the doctor and insurer openly disagreed, but here the possibly conflicting interest was not so evident to defendant. We believe that this arguable conflict would also not be evident to a jury absent expert testimony. Further, defendant in the case at bar did not violate any instruction and did not choose to follow the instruction of one client in derogation of another. *Rogers*, therefore, does not establish the standard of care in this case.

Accordingly, we conclude that the appellate court was correct in determining that plaintiff was required to present expert testimony in order to establish a cause of action for legal malpractice, and that the trial court erred in not granting defendant's motion for a directed verdict at the close of plaintiff's case.

In the alternative, plaintiff argues that the trial court was incorrect in deciding that it had no discretion under Supreme Court Rule 220 (107 Ill. 2d R. 220) when it held that plaintiff's legal malpractice expert witness could not testify because plaintiff failed to disclose the identity of this expert within the deadlines which Rule 220 establishes.

On the third day of the trial in the case at bar, defendant moved to bar plaintiff's legal malpractice expert witness. In the motion, defendant argued that plaintiff had not complied with Supreme Court Rule 220. Rule 220 states:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order schedul-

ing the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. \*\*\* All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. \*\*\* Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." 107 Ill. 2d R. 220(b).

The substance of defendant's argument in his motion to bar plaintiff's legal expert was that plaintiff first disclosed the name of her legal expert in a letter dated August 22, 1988. This disclosure was less than 60 days before the trial began on October 11, 1988. Defendant argued that the plain language of Rule 220 contains only one express sanction, and requires that any expert whose identity is not disclosed sooner than 60 days before trial must be barred from testifying. The trial court, noting that it was bound by a recent Second District appellate court opinion (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214), agreed and granted defendant's motion.

Plaintiff claims that the trial judge's decision to bar her legal expert was erroneous. First, plaintiff claims that a proper interpretation of Rule 220's language leads to the conclusion that no violation of the rule took place in the case at bar. In the alternative, plaintiff argues that the *Phelps* case is not the correct interpretation of a trial court's discretion in imposing sanctions on litigants who violate Rule 220, or, at least, that the trial judge in the case at bar misread *Phelps* when he held that he had no choice but to bar plaintiff's expert. Plaintiff cites to decisions in other districts in which the appellate court has held that the imposition of sanctions under Rule 220 is within the sound discretion of the trial court. Therefore, because the trial judge in this case felt compelled to impose sanctions, plaintiff impliedly asks this court

for a new trial, and demands that this court, in its supervisory capacity, resolve the conflict among the districts in this area.

We note that the committee that drafted Rule 220 had first studied legislative attempts to "facilitate trial preparation and the evaluation of claims by eliminating the last-minute disclosure of experts on the courthouse steps or during the course of trial." (107 Ill. 2d R. 220, Committee Comments, at 353-54.) The committee indicated its dissatisfaction with the then current state of the law regarding the late or surprise disclosure of expert witnesses by citing Illinois decisions variously permitting such an expert's testimony to the opponent's prejudice, refusing such testimony to the detriment of the litigant offering it, or allowing continuances to deal with the late or surprise information—thus disserving both the public and the legal profession and leading to reversible errors. Rule 220 was designed to "eliminate these evils by establishing a uniform, but not inflexible, framework for the timely revelation of the identity of expert witnesses and the subject matter of their testimony." (107 Ill. 2d R. 220, Committee Comments, at 354.) The appellate court has repeatedly held that Rule 220's purpose is the timely disclosure of expert witnesses in good faith. *E.g., Dixson v. University of Chicago Hospitals & Clinics* (1989), 190 Ill. App. 3d 369, 378.

With this in mind, we first look at plaintiff's claim that no Rule 220 violation occurred in the case at bar. While plaintiff admits that she did not disclose the identity of her expert at least 60 days prior to trial, she claims not to have literally violated the rule. She asserts that the trial procedures contemplated by Rule 220 do not exist in all judicial circuits in Illinois.

Plaintiff apparently interprets Rule 220(b)'s disclosure provisions as requiring the trial court to be responsible

for the proper disclosure of expert witnesses. Plaintiff points to the contrast between (1) the requirement that a party who chooses to retain an expert witness must disclose that expert's identity and opinions within 90 days after the substance of that expert's opinions is discovered *or* at the first pretrial conference, and (2) the requirement that, where a party or the trial court acts to establish a discovery schedule, it must be completed no later than 60 days before the trial commences. Plaintiff appears to view these two portions of the rule as establishing separate requirements, with the trial judge in the responsible role in both. Under plaintiff's interpretation of Rule 220, no violation occurred in this case, because there was no pretrial conference and no court-ordered discovery schedule. (On separate grounds, explained later, she also attempts to dispose of the 90-day requirement.) Thus, plaintiff views the pretrial conference and the discovery order as the controlling events under the rule, with sanctions appropriate only if a party fails to disclose an expert witness at a pretrial conference or if a discovery order mandates such disclosure. Plaintiff's analysis is somewhat similar to the Fourth District holding in *Illini Aviation, Inc. v. Walden* (1987), 161 Ill. App. 3d 345, 347, where the appellate court held that, without court-ordered discovery, no violation of Rule 220 can occur as long as the expert is disclosed within 90 days of the party's learning of the expert's opinion. (*Contra Klingler Farms, Inc. v. Effingham Equity, Inc.* (1988), 171 Ill. App. 3d 567, 571 (expert disclosure is mandatory, whether trial court orders discovery schedule or not; all disclosure must occur 60 days before trial to uphold Rule 220's purpose).) Under her own analysis, plaintiff admits that she could have disclosed the expert within Rule 220's 90-day deadline, but that her failure to do so was innocent and not designed to obtain any advantage or surprise. Rather, plaintiff seeks to shift the

blame for her "technical" violation of Rule 220 to defendant for failing to request discovery pursuant to Rule 219 or 220, which apparently would have alerted the trial judge to order a pretrial conference or to establish a proper discovery schedule.

We disagree with plaintiff's analysis of Rule 220. The plain language of Rule 220 requires that litigants disclose an expert witness, who they contemplate will testify for them, within 90 days after the litigants know of the substance of the expert's testimony or at the first pretrial conference, whichever is later. This two-pronged requirement allows for the flexible application of the rule in the various judicial circuits with differing rules and customs (see 107 Ill. 2d R. 220, Committee Comments), while fulfilling the rule's purpose of timely, good-faith disclosure of experts. Thus, in a judicial circuit that mandates pretrial conferences, disclosure is guaranteed by the time of the first conference or by 90 days after knowledge of the expert opinion's substance is acquired. In circuits where pretrial conferences are optional (and sometimes infrequent), disclosure is still required within 90 days of a litigant's discovering the substance of the testimony of his or her contemplated expert.

The record shows that no pretrial conference occurred in the case at bar. It also reveals that plaintiff was aware of the substance of her intended legal malpractice expert's opinion, at the latest, in February 1988—at least five months before she disclosed the expert's identity to defendant. Therefore, without the alternative of a pretrial conference, plaintiff was obligated to disclose the identity of her intended expert witness sometime in May or June 1988 (approximately 90 days later), but instead waited until August 22. No matter how we characterize this "technicality" involving Rule 220, it is a violation of the rule. There is no requirement

in the rule that, in order to trigger sanctions for failure to disclose an expert, a pretrial conference be held.

Plaintiff's analysis regarding the need for court-ordered discovery is also erroneous. Rule 220, after describing the 90-day/first-pretrial-conference requirement, states:

"In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses *** shall be disclosed. *** All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." (107 Ill. 2d R. 220(b)(1).)

The committee comments to Rule 220(b) indicate that this section of the rule was meant as "a final precaution" in the event that experts have not been disclosed under the rule's other provisions, giving a litigant ample time to decide whether to use a certain expert's testimony, as well as providing mandatory and exclusionary cutoffs as the trial approaches. Providing for court-ordered disclosure under Rule 220 also recognizes that in some circuits, most notably Cook County, the lengthy time between filing a case and its eventual trial could thwart Rule 220's purpose of timely, good-faith discovery. 107 Ill. 2d R. 220(b), Committee Comments.

Plaintiff's apparent theory, that there cannot be a Rule 220 violation without court-ordered discovery, therefore has no merit. It completely ignores the rule's clearly mandated 90-day/first-pretrial-conference alternative. It also would completely thwart the basic purposes for the rule—preventing surprise expert testimony while. facilitating timely, good-faith discovery—by allowing litigants to present undisclosed experts any time a trial court fails to

formulate a pretrial discovery schedule. Plaintiff's failure to disclose the identity of her contemplated expert witness within 90 days of learning the substance of that expert's opinion violated Rule 220, whether or not the trial court in the case at bar failed to hold a pretrial conference or to establish a discovery schedule.

We therefore need not consider plaintiff's request that we resolve the conflict between the *Illini Aviation* and *Klingler Farms* cases. The alleged violation in *Illini Aviation* occurred before the 90-day time period had elapsed. (*Illini Aviation*, 161 Ill. App. 3d at 347 (plaintiff disclosed expert within 90 days of learning of substance of expert's opinion, but less than 60 days before trial).) The holding in *Klingler Farms* simply states that, in all cases, all litigants must disclose their expert witnesses not later than 60 days before the trial commences. (*Klingler Farms*, 171 Ill. App. 3d at 571.) Thus, not only are both of these cases inapposite to the case at bar, but plaintiff's conduct would violate Rule 220 under both rulings. Also, because plaintiff's conduct clearly violates Rule 220's 90-day provision, it is inappropriate for this court to comment on the *Klingler Farms* court's implication that trial courts must enter orders scheduling expert witness discovery. (See *Klingler Farms*, 171 Ill. App. 3d at 571.) Reviewing courts will not decide moot or abstract questions or render advisory opinions. Courts of review also ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided. (*Condon v. American Telephone & Telegraph Co.* (1990), 136 Ill. 2d 95, 99.) Because plaintiff in the case at bar violated Rule 220's 90-day requirement, the question of whether there was a violation of the 60-day requirement is irrelevant. We will not decide an issue that has no bearing on the case before this court.

Plaintiff alternatively argues that we should reverse and remand her cause for a new trial because the trial judge was mistaken when he barred the plaintiff's expert from testifying on the ground that he was bound by the holding in the *Phelps* case. However, as we will explain, this issue is irrelevant and has no effect on the outcome of the case at bar.

Plaintiff claims that the decision to impose Rule 220 sanctions rests within the discretion of the trial court, whose decision will not be overturned absent a clear showing of abuse. (See, *e.g.*, *Continental Concrete Pipe Corp. v. Century Road Builders, Inc.* (1990), 195 Ill. App. 3d 1, 9; *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 1027.) Defendant cites to conflicting appellate court opinions which hold that once a trial court determines that a litigant has failed to comply with Rule 220, the sanction is automatic; the trial court must bar that expert's testimony. (See, *e.g.*, *Mitchell v. Wayne Corp.* (1989), 180 Ill. App. 3d 796, 802; *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224; *cf. Klingler Farms*, 171 Ill. App. 3d at 571 (defendant in case at bar argues *Klingler Farms* requires that expert be barred; however, *Klingler Farms* only defines violation of rule without discussing sanctions); *Mazzone v. Holmes* (1990), 197 Ill. App. 3d 886, 900-01 (upholding trial court's barring expert from testifying because of failure to comply with Rule 220, but containing no discussion of any trial court discretion in meting out sanction).) While plaintiff correctly notes the conflict on this issue among the appellate districts, we refuse to address an issue which the record indicates will lead to exactly the same result whether the trial judge had exercised discretion under Rule 220 or not.

When discussing the use of the *Phelps* case in making his decision in the case at bar, the trial judge noted the *Phelps* court's discussion of six guiding factors which trial

courts are to use in determining the severity of discovery violation sanctions: (1) the surprise to the adverse party; (2) the prejudicial effect of the expert's testimony; (3) the nature of the expert's testimony; (4) the diligence of the adverse party; (5) whether objection to the expert's testimony was timely; and (6) the good faith of the party calling the witness. (See *Phelps*, 159 Ill. App. 3d at 224 (citing *Ashford*, 99 Ill. 2d at 369).) After discussing each factor at length, the trial judge balanced and resolved four of the six factors in defendant's favor, stating that he would bar the testimony of plaintiff's expert under the *Ashford* factors using the same analysis the *Phelps* court applied.

Thus, even though the *Phelps* court held that Rule 220 mandates the barring of improperly disclosed expert witnesses, it also analyzed the facts of the case as if the trial court had had discretion in levying the sanction. (See *Phelps*, 159 Ill. App. 3d at 224-25.) The trial judge in the case at bar so closely followed the *Phelps* analysis that he also evaluated defendant's arguments in the same way. Therefore, the record expressly states what the trial judge would have decided had he believed he had the discretion to impose sanctions under Rule 220—he would have barred the expert's testimony anyway. Accordingly, a remand of this cause would yield the same result. As we stated before, we will not decide moot or abstract questions, render advisory opinions, or consider issues that are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided. (*Condon*, 136 Ill. 2d at 99.) Thus, we have no reason to consider this question.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*