KLINGLER FARMS, INC., Plaintiff-Appellee, v. EFFINGHAM EQUITY, INC., Defendant-Appellant.

Fifth District   No. 5—87—0206

Opinion filed June 28, 1988.

568

Robert A. Hoffman, of Ryan, Cini & Bennett, of Mattoon, for appellant.

Michael W. Klobnak, of Smith, McCollum & Riggle, of Flora, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Klingler Farms, Inc. (Klingler Farms), brought an action in the circuit court of Richland County seeking damages from defendant, Effingham Equity, Inc. (Effingham Equity), for breach of contract. Klingler Farms alleged that Effingham Equity delivered the wrong herbicide which, when applied by Klingler Farms, destroyed 275 acres of soybeans. After a trial by jury, a verdict was rendered in favor of Klingler Farms in the amount of $32,500 and the trial court entered judgment thereon. Effingham Equity appeals.

In March of 1985, Klingler Farms ordered from Effingham Equity 437½ gallons of Bicep, a corn herbicide, and 123 gallons of Dual, a soybean herbicide. This order was placed on a "back order sheet." On May 24 or 25, Klingler Farms contacted Effingham Equity to have a portion of the order delivered. Paul Klingler testified that he told Ron Hartke, an employee of Effingham Equity, to deliver 135 to 140 gallons of Dual. Hartke testified that Klingler instructed him to deliver 150 gallons of Bicep.

Hartke instructed another employee, Richard Hess, to deliver the bulk Bicep to Klingler Farms. The bulk Bicep was placed in an unlabeled storage tank. According to Paul Klingler's testimony, the herbicide is applied by mixing it with water in a mixing tank. From the mixer, the diluted herbicide is placed in a sprayer to be applied to the

field. While the two herbicides are markedly dissimilar in their bulk form, no one involved in the application process noticed that it was Bicep, not Dual, that was being applied to the soybean field.

Once the soybeans were destroyed, the Klinglers decided to plant corn rather than allow the field to lie fallow. The record indicates that in February of 1985, Klingler Farms had entered into a corn conservation program, which was a price support and production adjustment program under the direction of the United States Department of Agriculture. Under this program, Klingler Farms signed a contract which permitted the Klinglers to plant a maximum of 676.6 acres of corn in return for certain payments and other benefits. The contract also sets forth damages and penalties to be imposed if the contract is violated. Planting 275 additional acres of corn put Klingler Farms well above the maximum permitted acreage. As a result, Klingler Farms had to pay liquidated damages of approximately $3,900, plus $1,700 in interest, plus repayment of the deficiency payment, which totaled $19,900. Additionally, Klingler Farms was ineligible for a second payment of $15,000 or for loan programs or any other benefits associated with the corn conservation program.

Klingler Farms filed suit on October 27, 1985. At a pretrial conference held on August 7, 1986, the trial court set the case for trial on November 24, 1986, and established a discovery cut-off date of October 15, 1986. On November 10, 1986, Effingham Equity filed a notice of expert witnesses. Klingler Farms filed a motion *in limine* to exclude Effingham Equity's experts and such motion was granted. The trial court also denied Effingham Equity's motion to amend its answer to include a defense of comparative negligence. Trial commenced on November 24, 1986. After a trial by jury, a verdict was rendered in Klingler Farm's favor in the amount of $32,500.

We note initially that Klingler Farms filed a petition requesting leave to cite additional authority and the petition was taken with the case. Having considered the petition and being fully advised of its premises, we find that the petition should be and hereby is granted.

On appeal, Effingham Equity argues that the trial court erred in granting Klingler Farms' motion *in limine* and excluding Effingham Equity's expert witnesses. Specifically, Effingham Equity maintains that the trial court misinterpreted Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)).

In relevant part, the rule provides:

"(1) *Expert Witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert *** must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses *** shall be disclosed. *** All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence."

In *Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022, the court held that imposition of sanctions under Rule 220 rested within the sound discretion of the trial court and that the trial court did not abuse its discretion in disqualifying plaintiff's medical expert where such expert's identity was disclosed within the 90-day limitation period but only three days before trial.

In *Jarmon v. Jinks* (1987), 165 Ill. App. 3d 855, 520 N.E.2d 783, the defendants argued that absent a demand for disclosure of expert witnesses, there was no duty to disclose. As in *Fischer*, there had been no pretrial order establishing a schedule for disclosure of witnesses. The court rejected defendants' argument and, following *Fischer*, held that the trial court did not abuse its discretion in disqualifying defendants' expert witness where the identity of such expert was not disclosed until 1½ days after the commencement of the trial, regardless of whether such disclosure was within the 90-day limitation period.

While neither case deals specifically with the 60-day limitation period in Rule 220, they contemplate a rule that disclosure of expert witnesses is mandatory regardless of whether a demand for disclosure is made and that disclosure within 90 days of learning of the substance of the expert's opinion is alone not enough to comply with Rule 220. Clearly, there is some point in time prior to commencement of trial by which the identity of all expert witnesses must be disclosed.

In *Illini Aviation, Inc. v. Walden* (1987), 161 Ill. App. 3d 345, 514

N.E.2d 551, plaintiff sought to introduce the testimony of an expert whose identity plaintiff disclosed after commencement of the trial, but within 90 days of learning of his opinion. The court held that while Rule 220 mandates that the trial court set up a schedule for disclosure of expert witnesses so that discovery may be completed at least 60 days prior to trial, where no such pretrial order is issued, there can be no violation of Rule 220.

We find the decision in *Illini Aviation* difficult to reconcile with *Fischer* and *Jarmon*, and the court in *Illini Aviation* did not attempt to do so. Further, the holding in *Illini Aviation* would seem to be at odds with both the express language and clear purpose of Rule 220. The purpose of Rule 220 is to facilitate trial preparation by eliminating last minute disclosure of expert witnesses. (*Jarmon*, 165 Ill. App. 3d at 863, 520 N.E.2d at 788; 107 Ill. 2d R. 220, Committee Comments.) Further, Rule 220 provides that

> "the trial court *** *shall* enter an order scheduling the dates upon which all expert witnesses *** shall be disclosed []" and "[a]ll dates set by the trial court *shall* be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before *** the trial will commence." (Emphasis added.) 107 Ill. 2d R. 220(b).

■ We conclude that the most reasonable interpretation of this rule is that disclosure of expert witnesses is mandatory, regardless of whether the trial court issues an order establishing a schedule for disclosure of experts, and that disclosure of such experts must be made at least 60 days prior to the commencement of trial. This rule is in accord with both *Fischer* and *Jarmon* and with the clear intent of Rule 220. To hold otherwise would allow the disclosure of expert testimony at any time, even after the trial had commenced, as long as such disclosure was within 90 days of learning of the substance of his opinion. Such a rule would completely abrogate the intent of Rule 220. To the extent that *Illini Aviation* conflicts with this holding, we decline to follow it.

Effingham Equity's second argument on appeal is that the trial court erred in allowing Klingler Farms to introduce evidence, argue, and have the jury instructed that labeling of the storage tank was an element of the contract. Effingham Equity maintains that no evidence regarding the issue of labeling should have been admitted and the jury should not have been instructed that labeling was an element of the contract.

Klingler Farms' complaint alleges breach of contract based on delivery of the wrong herbicide and failure to label the storage tank.

Effingham Equity denied this in its answer but did not raise as an affirmative defense that labeling was not part of the contract. Effingham Equity's motion *in limine* to exclude all such evidence was denied and testimony was allowed on this issue over Effingham Equity's objections.

The contract in question was oral, not written. It was proper for the trial court to deny Effingham Equity's motion and to allow testimony on the issue of labeling to determine in fact whether it was an element of the contract and if so whether this element of the contract was breached. Because the issue of labeling was an element of the case, it was proper for the trial court to so instruct the jury.

The court instructed the jury that Klingler Farms' complaint alleged breach of contract

"in one or more of the following respects:
It delivered the wrong herbicide.
It failed to label plaintiff's bulk storage tank."

The jury returned a general verdict in favor of Klingler Farms. The return of a general verdict creates a presumption that all issues of fact upon which proof was offered were found in favor of the prevailing party. (*McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 481 N.E.2d 787.) Proof of breach on either basis alleged would support the verdict. Effingham Equity does not argue that the evidence does not support a finding that it delivered the wrong herbicide and such a finding is sufficient to support the jury's verdict. Further, the gravamen of the complaint was delivery of the wrong herbicide and most of the testimony at trial was in regards to this issue. The issue of labeling was peripheral, and even if such evidence were improperly admitted, we do not believe the jury was misled or Effingham Equity was prejudiced thereby.

Effingham Equity also argues that the trial court erred in not allowing it to plead the affirmative defense of comparative fault. Effingham Equity contends that while the trial court held that the complaint stated an action in contract, the complaint was so vague that it could have been construed to state a negligence claim and that the alleged breach of contract was based on the "negligence" of the parties.

Effingham Equity urges us to extend the doctrine of comparative fault to all actions involving negligence regardless of whether the complaint states a cause of action in contract or in tort. (See *O'Malley v. Putnam Safe Deposit Vaults, Inc.* (1983), 17 Mass. App. 332, 458 N.E.2d 752.) To adopt Effingham Equity's argument would interject an element of fault into many contract cases. The concept of fault is one of the major distinctions between contract law and tort law and

we are not persuaded that it should be abandoned.

■■ Finally, Effingham Equity argues that the trial court erred in admitting evidence relating to Klingler Farms' willful violation of the corn conservation program and in instructing the jury that it was an element of Klingler Farms' damages. We agree. The only damages which can be recovered in a breach of contract action are those damages which are the natural and proximate result of the breach. (*Sheppard v. Fagan* (1981), 94 Ill. App. 3d 290, 418 N.E.2d 876.) The damages suffered by Klingler Farms in this case cannot be said to be the natural or proximate result of Effingham Equity's breach of its contract. These damages were the result of an independent intervening act on the part of Klingler Farms. The duty to mitigate damages does not require a party to breach independent obligations to other third parties. We hold that the trial court erred in instructing the jury that Klingler Farms' breach of its corn conservation contract was an element of damages. This case is therefore remanded to the trial court for a proper determination of damages. The judgment is affirmed insofar as it determines that defendant committed a breach of its contract to deliver Dual herbicide, or to label properly the storage tank.

The judgment of the circuit court of Richland County is affirmed in part and reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

WELCH and LEWIS, JJ., concur.