RONALD MARSHALL, Plaintiff-Appellee, v. TAYLOR-WHARTON COMPANY, Defendant-Appellant.

First District (5th Division)   No. 1—90—0210

Opinion filed June 30, 1992.—Rehearing denied September 30, 1992.

598

GORDON, J., specially concurring.

Arnstein & Lehr, of Chicago, for appellant.

Bernard Nevoral and David L. Cwik, both of Bernard Nevoral & Associates, of Chicago (Jamis T. Ferrini, of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Ronald Marshall, filed suit alleging that defendant, Taylor-Wharton Company, defectively manufactured and designed a tractor-trailer which rolled over causing plaintiff severe injuries. After trial, the jury awarded plaintiff an $8.2 million verdict. Defendant appealed. We consider: (1) whether, in light of Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)), the trial court erred denying defendant's motion to continue the trial date to at least 60 days after defendant completed the discovery of plaintiff's last-minute substitute expert; and (2) whether, in light of Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)), the testimony of plaintiff's expert at trial went beyond the fair scope of the facts known or opinions disclosed during the discovery proceedings.

We reverse and remand for a new trial.

Relevant to our disposition are the following facts as disclosed by the record. On September 12, 1978, plaintiff sustained injuries while driving a tractor-trailer truck owned by his employer, Chemtron, Inc. The trailer portion of the truck contained 66 tubes used to transport hydrogen gas. The tubes were 24 feet long, spaced apart with special pads, and were connected to bulkheads protruding from plates connected to the end walls of the trailer.

While in the midst of a left turn at an intersection, plaintiff swerved to avoid an ambulance which approached from behind. The trailer rolled over dragging the tractor with it. The accident rendered the plaintiff a quadriplegic.

On August 18, 1980, plaintiff filed his complaint naming as defendants: Taylor-Wharton Company, the manufacturer of the trailer; International Harvester Company, the manufacturer of the truck; and

Hickey-Vandenberg Ambulance, Inc., the ambulance company that arrived on the scene. Taylor-Wharton and Hickey-Vandenberg joined Chemtron as a third-party defendant. Plaintiff settled with Hickey-Vandenberg and International Harvester prior to trial. Chemtron was dismissed pursuant to an agreement concerning workers' compensation.

Plaintiff's case did not go to trial until July 11, 1989, nine years after the complaint was filed. The progress of the case was typified by the following. On December 17, 1984, the court ordered that all discovery be closed on April 11, 1985. On October 25, 1985, the court assigned the case for pretrial hearings. Pretrial hearings were then scheduled and continued on three separate occasions. On February 24, 1987, the court ordered that the case be returned to the trial call. On October 27, 1987, plaintiff filed a motion to advance the case to trial. That motion was transferred and then continued to December 18, 1987. On April 18, 1989, the court entered an order assigning the case for trial to Judge Levin. On that same day, plaintiff moved for a change of venue and two days later the case was assigned to Presiding Judge Cawley.

Also on April 18, 1989, plaintiff notified defendant by letter that his expert witness, Dr. Jack Clemens, would be unable to testify because of an eye ailment. The record reflects that plaintiff had disclosed Dr. Clemens in 1987 and defendant had deposed Dr. Clemens first on February 27, 1989, and again on April 10, 1989, just 10 days prior to the receipt of plaintiff's letter. Neither Dr. Clemens nor plaintiff's counsel mentioned the eye ailment at the depositions. At any rate, in early May, plaintiff retained Dr. Ronald Ruhl, a consulting engineer and adjunct professor at the University of Illinois, as a substitute expert. Dr. Ruhl began working on the case on May 24 after receiving Dr. Clemens' file.

On May 23 defendant moved the court to bar the testimony of Dr. Ruhl pursuant to Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)). This hearing was not transcribed. The court denied the motion and ordered the following: that Dr. Ruhl be presented for deposition within two weeks; that defendant answer plaintiff's Rule 220 interrogatories and supplemental production request within seven days of the taking of the deposition; and that defendant produce its own expert, Dr. Uzgiris, for Dr. Ruhl within three days thereafter. Trial was tentatively set for June 12.

Defendant proceeded to depose Dr. Ruhl twice, first on June 8 and again on June 22. Defendant's expert, Dr. Uzgiris, was in attendance during both depositions. Dr. Ruhl had reviewed all of Dr. Cle-

mens' work and read plaintiff's deposition testimony prior to the depositions.

At the June 8 deposition, Dr. Ruhl testified that he had not yet made his own calculations or measurements. He based his testimony on the deposition testimony of plaintiff and on information given to him by plaintiff's counsel. Dr. Ruhl remarked that plaintiff's deposition testimony provided "very reasonable numbers." It was Dr. Ruhl's opinion that the "torsional rigidity" and the "tube banding system" of the trailer caused the trailer to be unreasonably dangerous. At the end of the deposition, plaintiff's counsel stated, "just for the record, Dr. Ruhl has indicated he would like to do certain things, and we are going to ask him to do whatever he'd like to do. So at some point when he finishes his calculations we will let you know that and go further." Three days later, defendant received 26 pages of Dr. Ruhl's calculations.

Before Dr. Ruhl's (second) June 22 deposition, the parties convened for several hearings before the court. On June 14 plaintiff argued numerous motions *in limine*. Plaintiff moved to bar, in part, evidence that defendant had not already produced pursuant to plaintiff's supplemental discovery requests. Plaintiff argued that discovery had been going on for several years and that any new evidence that defendant might produce would constitute unfair surprise to plaintiff.

Also on June 14 defendant filed (but did not argue) a memorandum in support of its May 23 motion to bar the testimony of Dr. Ruhl pursuant to Rule 220. The memorandum stated that after reviewing Dr. Ruhl's deposition and the 26 pages of calculations there was evidence of a substantial shift in the theories between Dr. Ruhl and Dr. Clemens. In fact, Dr. Ruhl had criticized portions of Dr. Clemens' theory. Defendant argued that Dr. Clemens' eye ailment was "merely a pretext to allow plaintiff the opportunity to create a new theory of liability on the eve of trial."

On the following Monday, June 16, the court held a hearing in which the parties and the court argued extensively over the merits of defendant's motion to bar Dr. Ruhl. First, plaintiff produced Dr. Clemens to testify about the legitimacy of his eye ailment. Dr. Clemens testified that he had numerous operations on both of his eyes "some years back" and at subsequent intervals "had completely lost vision in both eyes." His eye problems had persisted. He would likely have additional operations in the future. If Dr. Clemens testified at trial, he believed he would have great difficulty reading from the necessary documents.

Defendant did not cross-examine Dr. Clemens. Instead, defendant argued that, based on the shift in the theories and the complexity of Dr. Ruhl's 26 pages of calculations, Dr. Ruhl should be barred. During the hearing, plaintiff's counsel chastised defendant's expert who, as an engineer, was supposed to be able to understand the calculations. The court denied the request to bar Dr. Ruhl stating:

"No, I will give you another alternative. I'll give you time for your expert to get ready. You're telling me you're disadvantaged. I want the record to be clear about this. You're saying on the eve of trial—now, we can call today the eve of trial or we can call three or four weeks ago the eve of trial—I already ruled that Ruhl could substitute for Clemens due to the problem Clemens has, so that's not today. I also stated *** that if we got a new expert with new theories *** and you were at a disadvantage, I indicated that I would not force you at that point to go to trial. And now what you're showing me is that Ruhl didn't parrot Clemens. That's all you're showing, right? I already said that Ruhl could testify. I have no doubt in my mind Ruhl can testify in the case. I am not going to bar Ruhl from testifying. It's merely you are disadvantaged? *** And if that's the case, I'll give you the time."

Defendant conferred with his expert and then, in light of the 60-day requirement of Supreme Court Rule 220(b), requested a trial date subsequent to August 15. The court responded, "let me tell you, gentlemen, I am talking about 24 hours, 48 hours." Defendant maintained that he had a right to at least a 60-day continuance:

"And now in the twelfth hour, we get his calculations, we get a new theory, and that is in complete violation of Rule 220. Rule 220 makes it mandatory that an expert has to be disclosed *** before 60 days, and we're entitled to have his opinion. And for us, one day won't do it, two days won't do it, and respectfully, Your Honor, it would be error to allow this witness to come in and testify in this case at this juncture where there is a complete change. And what we respectfully request is a continuance so that we will be able to properly prepare to meet this testimony in light of Rule 220. And we are asking the court to set the case—to reset it for trial subsequent to August 15, and we're entitled to it."

The court recognized that defendant desired to preserve the record on this issue. However, the court had already arranged the courtroom for the special needs of the quadriplegic plaintiff. Therefore, the court denied defendant's request for the 60-day continuance.

The court decided that it would take the case on a day-by-day basis. The court held a separate hearing to determine the degree to which the opinions of Dr. Ruhl and Dr. Clemens differed and concluded that there was a "sufficient shift" in the theories which entitled defendant to additional time. The court stated it would continue the case "keeping in light we're trying to go ahead with a nine-year-old case." The court then gave the parties two days to try to settle the case. In lieu of settlement, the court decided on a July 11 trial date which amounted to approximately a three-week continuance. Before the court adjourned, it asked defendant's expert, Dr. Uzgiris, about the acceptability of the three-week continuance. Each time Dr. Uzgiris responded, "[It] makes sense."

At the (second) June 22 deposition, Dr. Ruhl disclosed that parts of his testimony at trial would depend on the testimony of the witnesses at trial. Plaintiff's counsel also stated:

"Just so we are clear on this, as the case develops I don't know what the witnesses are going to say exactly, but based on what the witnesses testified, and I am going to offer or provide transcripts of their testimony to Professor Ruhl, and so that we don't have another delay we will use visual aides to explain this highly technical terminology to the jury and we will use a computerized CAT system to visually explain *** what he is going to testify to today. So you are going to have a computerized animation of the trailer going over or the behavior of the trailer at the time of the accident."

Dr. Ruhl explained that he needed specific testimony in order to implement the computerized animation: "I want to hear from [plaintiff] precisely what motion he input into the vehicle through the steering wheel; where he did it; and in what time frame." According to Dr. Ruhl, plaintiff's deposition testimony did not make sense from "an engineering standpoint." Dr. Ruhl explained further: "At the time of [plaintiff's] deposition, the issues that I raised were probably not being discussed to the extent that they should have been." Dr. Ruhl needed more information in order to compute a variety of factors including the radius and articulation angle of the turn in the intersection. Finally, Dr. Ruhl stated that he intended to "update [his] analysis based on testimony."

On June 30, the parties convened for another hearing before trial. Defendant disclosed two last-minute witnesses who had knowledge of the design, manufacture or sale of the trailer. Plaintiff complained that he was "snowballed with two witnesses on the eve of trial." Defendant responded that these witnesses were necessary because Dr.

Ruhl had changed and complicated the theory of the case. The court expressed its displeasure with these developments but ruled that one of defendant's witnesses would be allowed to testify.

Before addressing the trial testimony, we note that plaintiff's deposition transcripts were not made part of the record.

On July 13 and 14, plaintiff testified at trial. On direct examination plaintiff described the type of truck he was driving, the number of gears and corresponding speeds for operation, and the types of steering and braking mechanisms. Plaintiff then described his delivery assignment on the day of his injury including the route which brought him to the site of the accident. Plaintiff stated that the truck was in fifth gear as he approached the intersection; the traffic light was green; there were two automobiles in front of him; he shifted down to fourth gear in preparation for his left-hand turn; at that point he was travelling "about 18 or 20 miles an hour"; right before he made his turn he shifted down to third gear, which reduced his speed to approximately 10 miles an hour; he was still in third gear when he passed the cross-walk; when he heard the siren of the ambulance he "cut the wheel slightly to the right" in order to get out of the way. Plaintiff stated he could not tell if he went onto the sidewalk as well as the curb because "that was too fast, too fast of a thing." Plaintiff summarized:

> "I didn't know if the ambulance would proceed south or if it would try to proceed east on 106th Street, but at approximately right here [indicating], I brushed the curb and went up and then I jerked the wheel back over to this way, straightened the trailer out, and at that point I felt the tug and everything went over. Now, that's to the best of my recollection what happened."

On cross-examination, plaintiff testified that the accident "took place in a matter of seconds." He described the turn of the steering wheel as a "sudden, real jerk type turn." On redirect, plaintiff stated that the three words he would use to describe the maneuvers of the wheel were "turn," "pull," and "jerk." At various points in plaintiff's testimony, plaintiff's counsel read excerpts of plaintiff's deposition testimony. These excerpts did not indicate that plaintiff's trial testimony was more specific than plaintiff's deposition testimony.

On July 17, three days later, Dr. Ruhl testified at trial. Dr. Ruhl stated that he relied on plaintiff's trial testimony to prepare him for his analysis. In his opinion "the design of the trailer dynamics" was unreasonably dangerous. In sum, Dr. Ruhl believed that the design had three problems: (1) the springing system was too soft; (2) the

frame was not stiff enough; and (3) the load itself lacked torsional rigidity, *i.e.*, it did not work with the frame.

Defendant's first Rule 220 objection to Dr. Ruhl's testimony occurred when plaintiff's counsel produced two sample plates (exhibits 79 and 80) which Dr. Ruhl intended to use to criticize the method to which the tubes were affixed to the bulkheads. Defendant stated that the exhibits had never been disclosed. Plaintiff's counsel explained that "I didn't tell them because I didn't know this until Professor Ruhl brought it down." Plaintiff argued further, relying on *Foster v. Devilbiss Co.* (1988), 174 Ill. App. 3d 359, 529 N.E.2d 581, that the exhibits were merely demonstrative evidence which did not require disclosure. Dr. Ruhl then attempted to use other sample plates (exhibits 80A and 80B) to show a design alternative on how the tubes could have been better affixed to improve torsional rigidity. Defendant objected because, although Dr. Ruhl had criticized in his deposition the manner in which the tubes were affixed, Dr. Ruhl never discussed any design alternative. Plaintiff's counsel argued that defendant's expert was present during Dr. Ruhl's deposition and that it was defendant's fault for not asking about any design alternatives. Defendant responded that Rule 220 imposed an affirmative duty to disclose the opinions as well as the bases for the opinions that will be used at trial. The trial court denied defendant's objections.

Defendant objected again when plaintiff's counsel attempted to introduce documents derived from the computer simulation of the accident. Although plaintiff's counsel had previously indicated that he would use a computer simulation, defendant was supposed to have been able to look at the documents before trial. Defendant saw the documents for the first time as they were shown to the jury. Plaintiff's counsel explained that the documents did not become available until the plaintiff had finished testifying. Defendant questioned why plaintiff's counsel was not able to obtain the information from his own client prior to trial. The court stated: "We are past that. Do you want some time to see what they are giving you?" Defendant looked at the documents briefly in front of the jury before Dr. Ruhl's testimony continued.

Dr. Ruhl next testified at length and in scientific detail concerning the factors leading up to the roll-over. Defendant objected again:

> "This is all new. We were never informed as to the times he is testifying about now, and the degrees, 15 degrees, minus 5 degrees, minus 13 degrees. This is all new stuff. We are doing discovery during trial."

Plaintiff's counsel responded:

"It came from the witnesses at trial and from Ronald Marshall himself. \*\*\* And although we had depositions of the witnesses and we have depositions of Ronald Marshall, the final simulation could not be prepared certainly because I surely can't use a discovery deposition as evidence, \*\*\* that I believe is an ill founded motion.
\*\*\*

I can't use a discovery deposition to have this man spend a fortune preparing a computer assisted schematic until the actual evidence comes in."

Defendant again inquired why plaintiff's counsel did not obtain the necessary information from his own client before trial. The court and counsel then engaged in a lengthy sidebar about the viability of defendant's Rule 220 objections, whether Rule 220 recognized a distinction between an expert's opinion and the facts supporting the opinion, the degree to which Dr. Ruhl's testimony included specific undisclosed information, and how the parties would proceed with the case. The court overruled defendant's objections on the ground that Dr. Ruhl's testimony was based on plaintiff's testimony. Defendant then informed the court that in order to avoid repeated sidebars it would reserve the right to make a "continuing objection" based on Rule 220.

The next day defendant moved for a mistrial based on Dr. Ruhl's testimony. The court denied the motion. The record reflects a lengthy discussion ensued concerning defendant's "continuing objection." As Dr. Ruhl resumed his testimony using the computer simulation, defendant objected again several times. The court reserved ruling on the objections. Finally, plaintiff's counsel attempted to introduce a computer simulated drawing entitled "Tilt of Trailer During Turns." Defendant had never seen the drawing. Plaintiff argued that the drawing was only demonstrative. The court sustained the objection to this drawing.

Dr. Ruhl continued to testify by describing safe and feasible design alternatives to the design features of the trailer which rolled over. Defendant objected on the ground that Dr. Ruhl had never disclosed these design alternatives. The court sustained some of these objections but overruled others on the ground that defendant could not claim surprise.

This completed Dr. Ruhl's direct examination. We will not, here, provide a recantation of Dr. Ruhl's cross-examination.

After the presentation of all of the evidence, the jury found defendant liable and awarded plaintiff $8.2 million.

Defendant filed a post-trial motion arguing defendant was entitled to a new trial pursuant to violations of Rule 220. The trial court stated that neither party had wanted the case returned to the trial call. Therefore, the court held that Rule 220 did not apply because the parties had simply attempted to determine how much time was needed before the trial started.

Defendant filed this appeal.

OPINION

■■ We begin by stating that the trial court's determination during the post-trial motion that Rule 220 did not apply is unsupported by the record. We have carefully searched the record and can find no evidence that the trial proceeded pursuant to an agreement between the parties or that defendant (or defendant's expert) in any way waived Rule 220's application. Defendant filed timely motions under under Rule 220 and continued to preserve the record throughout the trial proceedings.

Although it is not a dispositive issue in the instant case, we first address whether the trial court erred by not disqualifying Dr. Ruhl in light of his last-minute disclosure. There has been a conflict in the appellate case law over the degree to which a trial court may exercise discretion in choosing a sanction pursuant to a violation of Rule 220. Some cases hold that Rule 220 is tied to Rule 219, and therefore the trial court may exercise its normal discretion in selecting from the variety of sanctions available under Rule 219. (*E.g., Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 549 N.E.2d 784.) These cases rely, in part on the following language in Rule 219(c):

"If a party, or any person at the instance of or in collusion with a party, unreasonably refuses to comply with any provision of part E of article II [which includes Rule 220] of the rules of this court *** or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following." (134 Ill. 2d R. 219(c).)

The rule then lists six possible sanctions. Furthermore, the Committee Comments for Rule 219 provide: "Subparagraph (c) was amended in 1985 to make it clear that the sanctions provided for therein applied to violations of new Rules 220 and 222 ***." 134 Ill. 2d R. 219, Committee Comments.

Other cases hold that Rule 220(b) itself provides only one sanction, disqualification. These cases rely on the explicit language of Rule

220(b): "Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (134 Ill. 2d R. 220(b).) Therefore, these cases hold that a trial court's discretion to enter a sanction other than disqualification is severely limited. *E.g., Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 1029, 549 N.E.2d 784 (Jiganti, P.J., specially concurring); *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974.

■ We believe that both approaches are supported by reason. However, we believe the latter of the two approaches is the better. We agree with Justice Jiganti's specially concurring opinion in *Kosinski*. There, Justice Jiganti points out that the the prospect of allowing the variety of sanctions under Rule 219(c), including last-minute depositions, would create the very evil sought to be remedied by Rule 220. In terms of defining this "severely limited discretion," we agree with the court in *Phelps*, which provided that whenever a trial court determines that an expert witness has not been properly disclosed, the expert should be disbarred from testifying unless to do so would create a manifest injustice. In other words, the trial court should exercise discretion only in determining whether the facts show that disqualification of the expert would create "manifest injustice."

Here, the record reflects that Dr. Clemens had a severe eye ailment. We will not challenge the severity of the ailment. We add parenthetically that Dr. Clemens, or any other properly disclosed expert, might have had other legitimate excuses for his inability to testify; a severe accident or even death are examples. In these types of situations, it would result in manifest injustice to require a trial court to automatically disqualify a substitute expert witness and thereby deprive a party from presenting expert testimony. Therefore, in light of Dr. Clemens' severe eye ailment, we hold that the trial court did not abuse its limited discretion in choosing not to disqualify Dr. Ruhl.

We next address the 60-day requirement of Rule 220(b). Specifically, we must address whether the trial court erred denying defendant's motion to continue the trial date to at least 60 days after defendant completed the discovery of Dr. Ruhl.

■ Again, we must discuss the role of the trial court's discretion in applying this requirement. In fact, plaintiff here has argued that the language of Rule 220(b) does not contain any "clear directive" whether the 60-day requirement is mandatory or discretionary. In support thereof, plaintiff cites *Illini Aviation, Inc. v. Walden* (1987), 161 Ill. App. 3d 345, 514 N.E.2d 551, and *Singh v. Air Illinois, Inc.*

(1988), 165 Ill. App. 3d 923, 520 N.E.2d 852. Plaintiff suggests that the 60-day requirement does not demand rigid, formalistic compliance.

We disagree with the plaintiff. We believe that the express language and clear purpose of Rule 220(b) *mandates* the completion of discovery no later than 60 days prior to trial. The language of Rule 220(b) is replete with "clear directives." In addition, the Committee Comments to Rule 220(b) state:

"As a final precaution, however, in the event that the identity of the experts has not theretofore been disclosed, the rule provides that the trial court shall establish a specific schedule under which the experts for all parties must be disclosed, a schedule which insures that *all discovery* relating to such experts *will be concluded* not later than 60 days before the date on which the trial court reasonably anticipates that the case will go to trial. The committee is of the opinion that this provides a litigant with ample time within which to decide whether an opinion is sufficiently favorable to his position that he would want to use the person expressing it as a witness. In instances where opinions are not sought until a party approaches an imminent trial, a *mandatory and exclusionary cutoff is provided.*" (Emphasis added.) (134 Ill. 2d R. 220, Committee Comments.)

Furthermore, the first case cited by plaintiff, *Illini Aviation*, has been widely discredited. (See *Barth v. Reagan* (1990), 139 Ill. 2d 399, 564 N.E.2d 1196; *Klingler Farms, Inc. v. Effingham Equity, Inc.* (1988), 171 Ill. App. 3d 567, 525 N.E.2d 1172; *Wehmeier v. U N R Industries, Inc.* (1991), 213 Ill. App. 3d 6, 572 N.E.2d 320.) The second case cited by plaintiff, *Singh*, does not apply because the expert there had been timely disclosed.

We believe that where the 60-day requirement applies, a trial court has no discretion to grant a continuance of less than 60 days. We believe that this adheres to the Committee Comments' depiction of the 60-day requirement as a "final precaution." A party is automatically entitled to the protection of the 60-day requirement and does not have to show surprise or prejudice when making the request before the trial court. The court may, of course, exercise its discretion in granting a continuance of greater than 60 days if the facts or the complexities of the issues warrant. Further, if so inclined, a party may waive its right to the 60-day requirement.

In light of all the above, we hold the trial court's continuance of less than 60 days in the instant case constituted, on its face, a violation of Rule 220(b).

Next, plaintiff argues that assuming Rule 220(b) was violated, defendant must still show on appeal that it was prejudiced in order to obtain a new trial. Plaintiff cites *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1991), 209 Ill. App. 3d 192, 568 N.E.2d 80. Other cases, including the *Kosinski* case we have relied upon above, have indicated that prejudice must be shown on appeal to merit a new trial. Therefore, we will address whether the defendant here was prejudiced. We note as a caveat, however, that assuming trial courts begin to schedule trial dates according to a mandatory application of the 60-day requirement, the number of cases that will be appealed on this issue in the future will become nil.

■ We find it interesting that plaintiff argues that defendant was not prejudiced by Dr. Ruhl's last-minute disclosure. Plaintiff filed numerous motions *in limine* and later objected to the last-minute disclosure of defendant's two witnesses based on the very fact that the trial had been going on for several years and any new evidence would prejudice plaintiff. We are inclined to believe this prejudice applied to defendant as well.

Plaintiff argues, citing again *Burke* and *Kosinski*, that defendant took two depositions of Dr. Ruhl which obviated any surprise or prejudice. However, numerous other courts have expressly held that a deposition taken prior to trial does not cure the surprise or prejudice. (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 459 N.E.2d 940; *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974; *Hatch v. Golden Rule Insurance Co.* (1990), 204 Ill. App. 3d 790, 562 N.E.2d 623; *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 511 N.E.2d 912.) Furthermore, the facts in *Burke, Kosinski*, and other cases cited by plaintiff are clearly distinguishable because none involved a shift in the experts' theory. In fact, the court in *Kosinski* expressly cautioned that prejudice would have resulted had the facts presented a shift in the expert's theory.

Here, the trial court made an express finding that Dr. Ruhl's testimony constituted a shift in theory. We find this to be compelling evidence that defendant was prejudiced. Plaintiff reminds us, however, that defendant's expert, Dr. Uzgiris, stated twice to the court that the three-week continuance "made sense." Plaintiff suggests that defendant was prepared even in light of the shift in theory. We point out that Dr. Uzgiris made these responses only *after* the request for a continuance of over 60 days was denied by the court.

In addition, several other factors establish that defendant was prejudiced. For example: Dr. Ruhl's depositions produced many pages of new calculations; by plaintiff's own admission, Dr. Ruhl's testimony

was "highly technical"; and defendant was not able to investigate significant portions of Dr. Ruhl's testimony because it was conditioned on plaintiff's testimony at trial. Under these circumstances, we believe that defendant was not able to thoroughly prepare for trial. Therefore, the trial court's failure to comply with the 60-day requirement of Rule 220(b) prejudiced defendant.

We understand that the trial court had reservations about continuing a nine-year-old case for another 60 days. We further understand that the trial court made special accommodations for the needs of the quadriplegic plaintiff. Certainly, we are aware of the ramifications that another trial will have on plaintiff. However, defendant was automatically entitled to the protection of the 60-day requirement and the trial court's violation of the requirement resulted in prejudice to defendant. Therefore, defendant is entitled to a new trial.

We also address whether, in light of Rule 220(d), the testimony of Dr. Ruhl went beyond the fair scope of the facts known or opinions disclosed during the discovery proceedings. Rule 220(d) provides:

"To the extent that facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with nor go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 134 Ill. 2d R. 220(d).

In the instant case, there are many aspects of Dr. Ruhl's testimony which bear upon the scope limitation of Rule 220(d). We first focus on plaintiff's contention that Dr. Ruhl needed "more specific testimony" from the plaintiff at trial in order to complete his opinions. We cannot accept this contention for a variety of reasons. We believe defendant raised a legitimate question as to why plaintiff's counsel could not obtain the necessary information from his own client. This case had been pending for nine years. It defies reason to believe that plaintiff's counsel could not obtain the information available from his own client during this nine-year period. Also, there is no merit to the suggestion: "At the time of [plaintiff's] deposition, the issues that [Dr. Ruhl] raised were probably not being discussed to the extent that they should have been." Defendant took plaintiff's deposition *before* Dr. Ruhl's last-minute disclosure; defendant cannot be disadvantaged for failing to predict that Dr. Ruhl would need more information to "compute a variety of factors." In addition, the record simply does

not support plaintiff's contention. We have analyzed plaintiff's testimony at trial and those portions of plaintiff's deposition testimony excerpted into the record. Even applying a liberal standard, we can find no appreciable degree of specificity to plaintiff's trial testimony. The quotes set forth in our statement of facts demonstrate this point. The record simply belies the contention that Dr. Ruhl needed "more specific" testimony to complete his opinion. In sum, we see no reason why Dr. Ruhl could not have disclosed all of his trial testimony prior to trial.

■ Specific portions of Dr. Ruhl's testimony which exceeded the scope of his discovery disclosures included the lengthy and scientifically detailed testimony concerning the factors leading up to the rollover. During this time, plaintiff also introduced documents derived from the computer simulation. Defendant objected:

"This is all new. We were never informed as to the times he is testifying about now, and the degrees, 15 degrees, minus 5 degrees, minus 13 degrees. This is all new stuff. We are doing discovery during trial."

The record shows that plaintiff did not dispute that this evidence was beyond the scope of Dr. Ruhl's discovery; rather, plaintiff attempted to justify the admission of the evidence on other grounds:

"Although we had depositions of the witnesses and we have depositions of Ronald Marshall, the final simulation could not be prepared certainly because I surely can't use a discovery deposition as evidence. *** I can't use a discovery deposition to have this man spend a fortune preparing a computer assisted schematic until the actual evidence comes in."

We believe that this justification stands contrary to the fundamental purpose of pretrial discovery and Rule 220. The whole purpose of the scope limitation of Rule 220(d) is to allow parties to prepare for trial based on the disclosures made during discovery. Furthermore, defendant here was entitled to the protection of Rule 220(d) regardless of the cost to plaintiff.

■ Another specific portion of Dr. Ruhl's testimony which exceeded the scope of his discovery disclosures included the discussion of design alternatives and the corresponding use of exhibits. Again, plaintiff did not dispute that this evidence was new. Plaintiff argued that the exhibits were merely demonstrative evidence which, under *Foster v. Devilbiss Co.* (1988), 174 Ill. App. 3d 359, 529 N.E.2d 581, did not fall under the application of Rule 220. We do not believe it is necessary for us to comment on *Foster*. We do note, however, that

these exhibits and other pieces of "demonstrative evidence" used by plaintiff came dangerously close to expert reconstruction evidence.

At any rate, it is clear that Dr. Ruhl's testimony concerning the design alternatives fell under the application of Rule 220(d). In this regard, plaintiff argued that it was defendant's fault for not inquiring about the design alternatives during Dr. Ruhl's depositions. Apparently, plaintiff relied on the language in Rule 220(d): "However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 134 Ill. 2d R. 220(d).

We believe that plaintiff mistakenly relied on this language in this case. Dr. Ruhl's depositions, taken on the eve of trial, provided a shift in theory, pages of new calculations, and reserved other portions of testimony until after the start of trial. In other words, because of plaintiff's last-minute substitution of experts, defendant lacked a proper opportunity to make the "inquiries" that plaintiff now relies on. Furthermore, defendant correctly asserted that plaintiff had an affirmative duty to supplement the expert testimony that would be used at trial. In fact, it was especially incumbent upon plaintiff to supplement Dr. Ruhl's testimony because it constituted a shift in theory. As the Committee Comments state:

> "In order to prevent an undisclosed shift in theory or belief the rule requires that a party seasonably submit a modified report or supplemental answers taking into account shifts in the expert's views." (134 Ill. 2d R. 220, Committee Comments.)

Furthermore, the Committee Comments state that the "inquiry" language relied upon by plaintiff should "have only limited application in light of the requirement that a party continuously supplement discovery concerning the opinions of such witnesses." 134 Ill. 2d R. 220, Committee Comments.

In view of the violations of Rule 220(d), we believe the unfairness to defendant was patent. Based on the limited scope of Dr. Ruhl's discovery disclosures, defendant was practically precluded from preparing a thorough response to Dr. Ruhl's trial testimony. Certainly, Dr. Ruhl's trial testimony provided a significant part of plaintiff's case. As Justice Rizzi has stated: "The day has come when many if not most major cases are decided solely on the basis of the opinions of expert witnesses. The trial bar must therefore be assured that opinions given by expert witnesses in discovery depositions will not be altered, amplified or changed at trial." (*Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 278 (Rizzi, J., dissenting).) It follows that the defendant here is entitled to a new trial.

We believe it is worth pointing out that the violations of both Rules 220(b) and 220(d) compounded the unfairness to defendant. In fact, had the trial court enforced the 60-day requirement of Rule 220(b) many of the problems under Rule 220(d) could have been avoided. Instead, the parties were clearly conducting discovery during trial and much of Dr. Ruhl's testimony unfairly exceeded the scope of his pretrial discovery. Therefore, we reverse and remand this case for a new trial.

Defendant raised several other issues on appeal which do not require our attention in light of our granting a new trial. In regard to the evidentiary issues concerning the trailer's safety and handling characteristics, we remind defendant that the trial court has broad discretion on these matters. However, we do not intend to preclude defendant from arguing these evidentiary questions again at the new trial.

Reversed and remanded for a new trial.

MURRAY, J., concurs.

JUSTICE GORDON, specially concurring:

I am in full agreement that the failure of the court to bar the expert or in the alternative, extend the date of trial, constitutes an abuse of discretion, requiring reversal, a determination which I find to be well warranted under the facts as presented. (See *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 459 N.E.2d 940 (six factors to be considered in determining abuse of discretion under Rule 219(c) (134 Ill. 2d R. 219(c)) include surprise to adverse party, prejudicial effect, diligence, nature of testimony, timeliness of objection and good faith of proferring party).) These *"Ashford"* factors were considered by our supreme court to be appropriate to Rule 220 (134 Ill. 2d R. 220) violations in *Barth v. Reagan* (1990), 139 Ill. 2d 399, 564 N.E.2d 1196.

I am not persuaded, however, that there is a manifestly greater need to rigidify the range of the trial judge's discretion in sanctioning the failure to make a timely disclosure of an expert under Rule 220 than there is with respect to other aspects of discovery of equal significance or gravity which are embraced under Rule 219(c). Our supreme court in *Barth v. Reagan* (1990), 139 Ill. 2d 399, 564 N.E.2d 1196, has expressly abstained from addressing the divergence between the cases maintaining linkage between Rules 220 and 219(c) and those which would eliminate the discretionary latitude which such linkage provides stating, "While plaintiff correctly notes the conflict

on this issue among the appellate districts, we refuse to address an issue which the record indicates will lead to exactly the same result whether the trial judge had exercised discretion under Rule 220 or not." *Barth*, 139 Ill. 2d at 420.

I am, however, persuaded that in no event should the court be denied necessary latitude of discretion to accommodate to a technical but otherwise harmless failure to comply with the provisions of Rule 220. Such inflexibility would lead to unnecessary and sometimes catastrophic hardship to the litigants. To rely upon the application of a harmless error standard would not suffice because it would impose a burden on a trial judge to breach a mandatory rule to achieve a more just result. Accordingly, the matter must be left as it is currently, within the sound "discretion" of the trial judge. See *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017.