FRANCES HARMON, Plaintiff-Appellee, v. JASHBHAI PATEL, Defendant-Appellant.

First District (1st Division)   No. 1—91—3329

Opinion filed May 10, 1993.

Lord, Bissell & Brook, of Chicago (William C. Anderson III, Hugh C. Griffin, and Sandra K. Macauley, of counsel), for appellant.

Thomas C. Moore, James C. Reho, and Jane F. Anderson, all of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from a medical malpractice action brought by plaintiff Frances Harmon against defendant Jashbhai Patel, M.D., for failure to diagnose and treat a staph and strep infection which allegedly resulted in necrotizing fascitis, thereby necessitating emergency and follow-up surgery. After a jury trial in which plaintiff's expert testified, plaintiff received a verdict in the amount of $508,750. Defendant appeals the verdict on the grounds that the circuit court erred in refusing to strike plaintiff's expert's standard of care testimony as being inconsistent with his deposition testimony in violation of Supreme Court Rule 220 (134 Ill. 2d R. 220) and that her expert's testimony was insufficient to establish proximate cause.

On November 30, 1983, plaintiff's car struck a large water pipe, causing her to hit her head and suffer a cut on her right knee. Plaintiff's sister, Patricia Welch, took her to St. James Hospital, where she was admitted. On December 2, 1983, plaintiff began suffering considerable pain in her right leg and informed the nurses and defendant about the pain. Defendant told plaintiff not to worry because no bones had been broken, and that the knee was merely bruised. By her third full day in the hospital, December 3, plaintiff's knee was worse. The knee was continuing to swell. Additionally, not only was the knee starting to change to a pinkish and yellowish color, but the color change had already crept to the beginning of her thigh. Plaintiff testified that she could not keep any cover on the knee because it felt so hot and informed defendant of this.

On plaintiff's fourth day in the hospital, the swelling had continued to travel further up her thigh and the pain was increasing. She began receiving injections of Demerol, which made her pain temporarily subside. She further testified that there was yellowish pus, which had an unpleasant odor, coming from the knee wound. Again, plaintiff informed defendant of the above. The next day progressed much like the fourth day had. Referring to the sixth day of her hospital stay, plaintiff described her leg as "gross" because it was "yellow, pink, red, whatever" and "looked like a bunch of worms." She complained to defendant that her leg was still hot and now had begun to itch. The

pain had also travelled so that her "entire body was in pain." Plaintiff testified that her stomach was swollen to the point that it appeared that she was four or more months pregnant. Further, she could not have a bowel movement. Plaintiff claimed to have informed everyone that came into her room of her condition, including defendant. By the seventh and eighth day in the hospital, plaintiff was so nauseated that she could not eat. Defendant, however, explained that what was wrong with plaintiff's leg was "going to run its course."

On the ninth night, plaintiff requested a glass of water. When the nurse brought her the water, a pain shot through her and she dropped the water. Plaintiff pleaded with the nurses to call her mother or a doctor. When the nurse refused, stating that she was hallucinating, plaintiff attempted to reach the telephone on the side of her bed; the nurses wrestled it away from her. Finally, plaintiff successfully contacted Welch, who came to the hospital immediately. Welch demanded that the nurse call defendant. Welch did speak with defendant at between 2 and 3 a.m. on the morning of December 10, relating to him plaintiff's condition. Defendant responded that he would come to the hospital right away. Defendant, however, did not come until at least four hours after Welch had spoken to him. Another doctor, Dr. James McLean, accompanied defendant and examined plaintiff. After the examination, McLean obtained plaintiff's consent for immediate surgery. Approximately 45 minutes after McLean's examination, plaintiff underwent surgery.

Plaintiff underwent two surgical procedures to treat an infection known as fulminating necrotizing fascitis. During the surgical procedures, over 20 bone-deep incisions were made in plaintiff's leg in order to release the pus and infection. Plaintiff suffers numerous permanent and disfiguring scars, as well as significant functional impairment.

At trial, plaintiff's expert, Dr. Richard Considine, testified that defendant failed to diagnose and treat plaintiff's staph and strep infection. Considine opined that defendant's malpractice lay in his failure to diagnose and treat, and thereby eliminate, the staph and strep organisms before they could cause the necrotizing fascitis.

Defendant testified at trial that he did not note plaintiff's knee wound until December 4. Defendant did, however, treat plaintiff for a yeast infection which he diagnosed from a urine test. This treatment did not have any relevance to plaintiff's knee, and he eventually admitted that he never prescribed any antibiotics to treat her knee. Defendant further testified that as late as December 5 there was no change in the swelling of plaintiff's leg. On December 6, he ordered a

culture on her knee wound. Defendant also admitted that he did not suspect a leg infection until late in the evening of December 8.

Next, defendant's expert, Dr. Coleman Seskind, testified. He had reviewed plaintiff's medical records and noted that contrary to defendant's testimony, the swelling in plaintiff's knee and leg continued throughout her hospital stay. Seskind further testified that clinically significant drainage from plaintiff's knee did not begin until December 8. Additionally, Seskind admitted that the record contained a measurement of plaintiff's thigh which indicated that her right thigh was six inches greater in diameter than her left thigh, although he felt this fact was not "clinically significant." Lastly, he stated that part of the basis for his opinion that defendant properly treated plaintiff was the assumption that defendant realized that there was increasing swelling in her leg. Defendant, however, testified that he never noticed increased swelling between the day he first saw plaintiff and the day of her first surgery.

The jury returned a verdict in favor of plaintiff in the amount of $508,750. Defendant now appeals.

A jury verdict based upon conflicting evidence should not be set aside unless opposite evidence was clearly evident. (*Topp v. Logan* (1990), 197 Ill. App. 3d 285, 554 N.E.2d 454.) It is the function of the jury to weigh contradictory evidence and to judge the credibility of witnesses at trial. *Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 462 N.E.2d 753.

At trial, Considine testified that by December 4, plaintiff's fourth day in the hospital, defendant should have diagnosed and treated the staph and strep infection in plaintiff's knee which was spreading upward to her thigh. Defendant did not object to that testimony. Then, Considine opined that to a reasonable degree of medical certainty, if the staph and strep infection had been properly diagnosed and treated with oral antibiotics beginning on December 4, plaintiff's surgery would have been avoided. In his opinion, the surgery would have been unnecessary because the infection would have cleared up prior to becoming necrotizing fasciitis. Thus, Considine opined that as a result of defendant's breach of the standard of care, plaintiff's infection turned into necrotizing fasciitis.

■ Defendant argues that since the circuit court found that the above testimony violated Supreme Court Rule 220(d) (134 Ill. 2d R. 220(d)), he is entitled to judgment notwithstanding the verdict or, in the alternative, to a new trial. The circuit court found that Considine's testimony at trial contradicted his deposition testimony in viola-

tion of Rule 220(d), but held that the extensive cross-examination cured that violation.

During his deposition, Considine was asked a series of questions relating to the time at which oral antibiotic treatment would have prevented the existing staph and strep infection from becoming necrotizing fascitis. At deposition, Considine testified that it was his medical opinion that oral antibiotics would not have been appropriate on December 6, 5, and 4. He explained his opinion by stating that oral antibiotics definitely would have been appropriate on December 3 because that was when defendant should have suspected infection, due to the fact that plaintiff was running a temperature accompanied by swelling and pain in her knee around the puncture wound. He further testified during his deposition that if defendant had ordered appropriate antibiotics on December *3*, he did not "think you would be talking about deviation from care." Additionally, Considine stated during his deposition that if defendant had ordered antibiotics on December 3, "maybe he would have avoided a lot of things that happened later on." At trial, however, Considine testified that if defendant had begun to properly diagnose and treat the staph and strep infections by December *4*, he would not have breached the standard of care. Defendant argues that the trial testimony differs from the deposition testimony and, therefore, violates Supreme Court Rule 220(d). The trial testimony, however, is more conservative than the deposition testimony, which was that defendant should have prescribed antibiotics on December 3. Thus, the trial testimony favors defendant by allowing him one more day before, in Considine's medical opinion, he deviated from the standard of care. Defendant, by his own admission, did not even suspect an infection in plaintiff's knee and leg until December 8.

Defendant cites *Lowney v. Arciom* (1992), 232 Ill. App. 3d 715, 597 N.E.2d 817, and *Marshall v. Taylor-Wharton Co.* (1992), 234 Ill. App. 3d 596, 599 N.E.2d 1015, to support his argument that he is entitled to a new trial because Considine's trial testimony deviated from his deposition testimony, thereby violating Rule 220(d). In *Lowney*, the court held that an expert's testimony at trial as to defendant's failure to warn a patient of risks of a procedure should not have been admitted because the expert failed to mention the duty to warn when asked at his deposition to give every opinion he had concerning the doctor's treatment of the plaintiff. (*Lowney*, 232 Ill. App. 3d 715, 597 N.E.2d 817.) Thus, in *Lowney*, there was a complete failure to testify at deposition to a failure to warn, and consequently testimony at trial regarding such was a surprise. In *Marshall*, the court found that plaintiff's expert violated Rule 220(d) by introducing *new* evidence, specifi-

cally, testimony of design alternatives which had never been discussed in deposition or disclosed prior to trial. (*Marshall*, 234 Ill. App. 3d 596, 599 N.E.2d 1015.) The case at bar does not involve *new* testimony on a subject. Here, the trial testimony is slightly different and, in fact, is favorable to defendant when compared to his deposition testimony. Thus, the above cases are distinguishable from the instant case.

Since the trial testimony was not new testimony, as in the cases cited by defendant, and further, because such testimony did not affect defendant detrimentally, we affirm the circuit court's finding that any alleged violation of Supreme Court Rule 220(d) was cured by extensive cross-examination during which Considine explained that he felt that if appropriate antibiotics were given to plaintiff starting on December 3-4, there would have been ample opportunity for the drugs to cure the staph and strep infections prior to them becoming necrotizing fascitis. Accordingly, defendant is not entitled to judgment notwithstanding the verdict or a new trial on the basis of a violation of Rule 220(d).

Defendant's next contention is that Considine's testimony failed to establish that defendant's deviation from the standard of care proximately caused plaintiff's condition to worsen to the point that immediate surgery was necessary. Defendant argues that Considine's causation testimony was speculation. Considine ultimately testified that to a reasonable degree of medical certainty defendant's deviation from the standard of care by not prescribing antibiotics for plaintiff's strep and staph infections proximately caused those infections to evolve into necrotizing fascitis. In medical malpractice cases, the causal connection "must not be contingent, speculative or merely possible, but there must be such a degree of probability as to amount to a reasonable certainty that the causal connection exists." (*Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 680, 303 N.E.2d 146, 152.) Although Considine was asked by defense counsel whether his opinion was "speculation" and he answered in the affirmative, he was effectively rehabilitated on redirect examination when plaintiff's counsel inquired of Considine what he meant by "speculation," and Considine responded that he meant "reasonable degree of medical certainty." Considine explained that he thought defense counsel used the word "speculation" because medicine is not an absolute science.

Relying on *Thomas v. University of Chicago Lying-In Hospital* (1991), 221 Ill. App. 3d 919, 583 N.E.2d 73, defendant further argues that Considine's alleged lack of experience rendered his causation opinions insufficient as a matter of law. Defendant is correct that the

established law is that an expert's opinion lacks probative value unless it is accompanied by foundation evidence establishing a witness' expertise or experience to form such an opinion. (*Hackett v. Equipment Specialists, Inc.* (1990), 201 Ill. App. 3d 186, 559 N.E.2d 752.) In *Thomas*, the expert was testifying to matters dealing with obstetrics and gynecology when her specialty was pediatrics. (*Thomas*, 221 Ill. App. 3d at 925, 583 N.E.2d at 77.) Here, Considine was testifying to matters within his expertise, namely, infections. He had treated hundreds of infections, including staph and strep, and when he gave his opinions, he was relying on three decades of experience in treating such infections along with research he had done regarding necrotizing fascitis. The fact that none of the infections which he treated had progressed to necrotizing fascitis is irrelevant. Considine made a clear causal relationship between preexisting infections, particularly staph and strep infections, and the development of necrotizing fascitis. He also testified that preexisting strep and staph infections are associated with necrotizing fascitis. It is irrelevant that the medical community does not understand why some infections lead to necrotizing fascitis when left untreated and other infections do not.

The essence of Considine's testimony is unmistakable: if the strep and staph organisms had been eliminated by appropriate treatment early on in the infectious stage, those organisms would not have been present to cause the necrotizing fascitis. This opinion was based on his knowledge of staph and strep infections and research he had done prior to trial. We hold that the plaintiff's expert's testimony was sufficient enough for the jury to find that defendant's failure to properly diagnose and treat the staph and strep infections proximately caused the infections to become necrotizing fascitis, thereby requiring immediate surgery.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.