BYE, Circuit Judge,
concurring in part and dissenting in part.
I agree the district court improperly granted judgment as a matter of law in favor of Benham with respect to both liability and damages, and I concur in the Court’s decision to reverse and remand for a new trial. I also agree the district court abused its discretion when, on the grounds Owen lacked the experience or education necessary to testify in this case regarding the standard of care required by a lawyer practicing in Arkansas, it excluded the testimony of SE Timber’s legal expert, Charles Owen.
I do disagree, however, with the Court’s failure to address whether the legal malpractice involved in this case fits within the common-knowledge exception, an issue the Court states it need not address after determining the district court erred in excluding Owen’s testimony. In my view, the one (declining to address the common-knowledge exception) does not necessarily follow from the other (deciding the expert testimony issue). To the contrary, I view it as unnecessary to decide whether the district court erroneously excluded Owen’s testimony if, in fact, the malpractice was so obvious expert testimony was unnecessary. By remanding for a new trial on both liability and damages, we are implicitly indicating there is a genuine issue of fact with respect to whether the conduct in this case fell below the applicable standard *866 of care. Because there are no genuine issues of material fact on such issue, I believe SE Timber should be saved the expense of a second trial on liability. I would, instead, remand with instructions to enter judgment as a matter of law in SE Timber’s favor on the issue of liability, and limit the scope of the second trial to the issue whether the legal malpractice caused SE Timber any damage.
There is no dispute lawyer Benham missed the applicable statutory deadline for filing a fair valuation suit. As the Court notes, SE Timber lost its fair valuation suit because it failed to file such timely. The district court presiding over the valuation suit specifically held Pictet’s October 30, 1998, letter triggered SE Timber’s obligation to file suit within 60 days:
Pictet complied with § 1328 in its October 30, 1998 letter by demanding payment of Pictet’s own estimated fair value of its shares .... According to § 1330, [SE Timber] had sixty (60) days from October 30, 1998, to commence a proceeding to resolve Pictet’s claim. [SE Timber] did not commence this proceeding until March 15, 1999, two and one-half months late.... To summarize, [SE Timber] clearly failed to pay Pictet as required by the statute under § 1325, and clearly failed to commence a timely judicial proceeding under § 1330, the consequence of which is that [SE Timber] must pay Pictet the amount it demanded on October 30, 1998, which is $5,130,752.00, plus interest.
App. at 149-50.
The district court presiding over the fair valuation suit also noted the applicable statutory procedure “is simple and straightforward.” App. at 145. I agree. The Arkansas Business Corporation Act of 1987 (the Act), Ark.Code tit. 4, ch. 27, sets forth in a very straightforward manner the step-by-step procedure a dissenting shareholder must undertake to assert dissenter’s rights under the Act. Likewise, the steps a corporation must consider in responding to a shareholder exercising dissenter’s rights are set forth in a straightforward manner. Up until SE Timber failed to respond timely to Pictet’s payment demands, both SE Timber and Pictet precisely followed the procedures required by the Act.
First, SE Timber informed Pictet a vote on the merger would take place at a special shareholder’s meeting, and notified Pictet of its dissenter’s rights.[7] In response, Pictet notified SE Timber it would dissent from the merger and preserved its dissenter’s rights.[8] Benham next provided notification of the approved merger and advised Pictet it should make a demand for payment and deposit the certificates for the dissenting shares.[9] Pictet timely certified it was the beneficial owner of 6,000 *867 shares of First Land stock, demanded payment of the fair value of the shares, and deposited its share certificates.[10]
Upon receipt of Pictet’s payment demand, the Act required SE Timber to either a) estimate the fair value of the stock and pay Pictet for its shares within sixty days, or b) return the share certificates to Pictet.[11] SE Timber failed to pay Pictet within 60 days, triggering Pictet’s statutory right to make its own fair value estimate.[12]
Pictet’s October 30 letter specifically referred to the fact that “[sjixty days have now elapsed since the date set out for demanding payment contained in your letter to us [and] we have not received a payment for our shares nor the estimate by the corporation.” The October 30 letter also specifically referred to Pictet’s statutory right to make its own fair value estimate under § 4-27-1328, and set forth a fair value estimate of $88 million. Thus, there is simply no dispute the October 30 letter triggered the 60-day deadline for SE Timber’s fair valuation suit,[13] and SE Timber’s concomitant obligation to pay Pictet the full amount of its estimate if no such suit was filed.[14]
Indeed, the undisputed facts in this case establish lawyer Benham knew the October 30 letter triggered the 60-day deadline for filing a fair valuation suit. As the Court notes, Pictet sent a second demand letter to SE Timber on January 15, 1999, which was substantively identical to the October 30 letter. After receiving the January 15 letter, Benham advised SE Timber the January 15 letter triggered the 60-day rule under § 4-27-1330. It necessarily follows, then, if Benham knew the January 15 letter triggered the 60-day deadline, he knew or should have known the substantively identical October 30 letter had already triggered the deadline. Thus, in this particular case, I simply cannot determine there is any genuine issues of material fact for the jury concerning the reasonableness of Benham’s conduct in missing the statutory deadline. Although I take no great joy in noting this, missing a statutory deadline is the classic example of when a lawyer’s lack of care and skill is so obvious the trier of fact can find , negli *868 gence as a matter of common knowledge. See Kaempe v. Myers, 367 F.3d 958, 966 (D.C.Cir.2004) (“Examples of attorney actions (or failures to act) that fall within the ‘common knowledge’ exception include ... allowing the statute of limitations to run on a client’s claim[.]”); Williams v. Callaghan, 938 F.Supp. 46, 50 (D.D.C.1996) (“Allowing a statute of limitations to run is an example of the type of conduct by an attorney which can be found negligent as a matter of common knowledge.”); O’Neil v. Bergan, 452 A.2d 337, 342 (D.C.1982) (same); Barth v. Reagan, 190 Ill.App.3d 516, 137 Ill.Dec. 463, 546 N.E.2d 87, 90-91 (1989) (“Expert testimony has been held to be unnecessary in Illinois ... in cases where the attorney has failed to comply with the statute of limitations.”); Michael A. DiSabatino, J.D., ADMISSIBILITY AND NECESSITY OF EXPERT EVIDENCE AS TO STANDARDS OF PRACTICE AND NEGLIGENCE IN MALPRACTICE ACTION AGAINST ATTORNEY 14 A.L.R.4th 170 at § 5 (1982) (discussing cases in which expert testimony was or was not required where alleged malpractice stemmed from attorney’s failure to file a case within a statutory deadline).
I also find no joy in discussing the obviousness of the malpractice committed in this case. I do not believe, however, the parties or the district court should suffer the unnecessary expense of a second trial on the issue of liability to spare this appellate court from the displeasure of doing so. As a consequence, I respectfully dissent from the Court’s failure to address whether the malpractice involved in this case fits within the common-knowledge exception. I would reverse and remand for a trial solely on the issue whether the malpractice caused SE Timber any damages.

. "If proposed corporate action creating dissenters' rights ... is submitted to a vote at a shareholders’ meeting, the meeting notice must state that shareholders are or may be entitled to assert dissenters' rights under this chapter and be accompanied by a copy of this chapter.” Ark.Code Ann. § 4-27-1321(a).

. “If proposed corporate action creating dissenters' rights ... is submitted to a vote at a shareholders’ meeting, a shareholder who wishes to assert dissenters' rights (1) must deliver to the corporation before the vote is taken written notice of his intent to demand payment for his shares if the proposed action is effectuated and (2) must not vote his shares in favor of the proposed action.” Ark.Code Ann. § 4 — 27-1321(a).

."[T]he corporation shall deliver a written dissenters' notice to all shareholders who satisfied the requirements of § 4-27-1321 [stating] where the payment demand must be sent and where and when certificates for certificated shares must be deposited [and setting] a date by which the corporation must receive the payment demand.” Ark.Code Ann. § 4— 27-1322.

. "A shareholder sent a dissenters' notice described in § 4-27-1322 must demand payment, certify whether he acquired beneficial ownership of the shares before the date required to be set forth in the dissenters’ notice ... and deposit his certificates in accordance with the terms of the notice.” Ark.Code Ann. § 4-27-1323(a).

. "[A]s soon as the proposed corporate action is taken, or upon receipt of a payment demand, the corporation shall pay each dissenter who complied with § 4-27-1323 the amount the corporation estimates to be the fair value of his shares, plus accrued interest.” Ark Code Ann. § 4-27-1325(a). "If the corporation does not take the proposed action within sixty (60) days after the date set for demanding payment and depositing share certificates, the corporation shall return the deposited certificates and release the transfer restrictions imposed on uncertificated shares.” Id. at § 4-27-1326(a).

. "A dissenter may notify the corporation in writing of his own estimate of the fair value of his shares and amount of interest due, and demand payment of his estimate ... [if] the corporation fails to make payment under § 4-27-1325 within sixty (60) days after the date set for demanding payment.” Ark.Code Ann. § 4-27-1328.

. “If a demand for payment under § 4-27-1328 remains unsettled, the corporation shall commence a proceeding within sixty (60) days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest.” Ark.Code Ann. § 4-27-1330.

. "If the corporation does not commence the proceeding within the sixty-day period, it shall pay each dissenter whose demand remains unsettled the amount demanded.” Ark Code Ann. § 4-27-1330.